HENDERSON, APPELLEE, *v.* RYAN, APPELLANT.

(No. 40566—Decided January 17, 1968.)

*Messrs. Dudnik, Komito, Nurenberg, Plevin, Dempsey & Jacobson, Mr. Robert M. Dudnik* and *Messrs. Riegler, Spohn & Sanislo,* for appellee.

*Messrs. Marble & Vordenberg* and *Mr. John H. Marble,* for appellant.

SCHNEIDER, J.  Upon the solicitation and advice of defendant Ryan, plaintiff Henderson embarked upon an in-

vestment scheme involving receivables of Goldendale Pine Company (later Interlakes-Gulf Lumber Company, Inc.) of which Ryan was an officer, director and attorney. He also was, and for a number of years had been, attorney for Henderson, his family and his plumbing business.

It appears that over a considerable period of time Henderson purchased, at an uncommonly high discount rate, accounts receivable due Goldendale supported by sales invoices, which in turn were secured by railroad bills of lading. A substantial number of the accounts, invoices and bills of ladings were forgeries and the security therefor nonexistent. Henderson's total losses from the nonpayment of the accounts receivables due to the subsequent insolvency of Goldendale amounted to $84,478.57.

In an attempt to recoup, Henderson simultaneously filed two actions in the Common Pleas Court of Cuyahoga County. One suit claimed fraud and deceit against Ryan and some 50 others (*Henderson* v. *Prentke et al.*). In the instant suit, Henderson alleged that Ryan, the sole defendant, was negligent in performing his duties as Henderson's attorney with respect to the delinquent accounts. Both cases were assigned for trial on the same day. *Henderson* v. *Prentke et al.*, proceeded to trial and upon its conclusion the court entered judgment for all the defendants upon finding that the proofs showed neither knowledge of false representations nor utter disregard as to their truth or falsity on the part of the defendants. The Court of Appeals affirmed that judgment and a motion to certify the record was overruled by this court on March 18, 1964, 37 Ohio Bar 280.

Thereafter, the instant case was tried. The trial court sitting without a jury found that Ryan's "failure to fully disclose and to effectively act [as Henderson's attorney in prosecuting the latter's claims against Goldendale] was negligence" which proximately caused the plaintiff's damages to the extent of $36,205.48. Plaintiff's recovery was limited to the amount of the transactions during August 1957, after Ryan had learned of Goldendale's insolvency

and that certain loans were overdue. The Court of Appeals likewise affirmed.

The ultimate question in this appeal from that judgment is whether the judgment in *Henderson* v. *Prentke et al.* is *res judicata* of the issues herein. The rule of law heretofore adopted by this court is that a judgment or decree in a former action does not bar a subsequent action where the causes of action are dissimilar, even though each action relates to the same subject matter. *Norwood* v. *McDonald*, 142 Ohio St. 299, paragraph two of the syllabus.

In Restatement of the Law, Judgments 159, appears the following:

"* * * Where the judgment is in favor of the defendant on the merits, the plaintiff cannot avail himself of grounds for recovery which he might have relied upon in the original action. Where, therefore, the second action is based upon the same cause of action as that upon which the first action was based, the judgment is conclusive as to all matters which were litigated or might have been litigated in the first action.

"Where, however, the subsequent action is based upon *a different cause of action* from that upon which the prior action was based, the effect of the judgment is more limited. The judgment is conclusive between the parties in such a case only as to matters actually litigated and determined by the judgment. *The judgment is not conclusive as to matters which might have been but were not litigated and determined in the prior action.*" (Emphasis supplied.)

What then constitutes a cause of action? Although the meaning given the term may vary according to the purpose for which it is sought (*United States* v. *Memphis Cotton Oil Co.*, 288 U. S. 62, 67, 68, 53 S. Ct. 278, 280, 77 L. Ed. 619, 623), legal writers have categorized three general views:[1]

1. A cause of action is identical with a remedial, or

---

[1]Fleming James, Jr., Civil Procedure (1965), 552, Section 11.10, Judgment as bar or merger; The dimensions of a single claim or cause of action; Clark, Code Pleading (2 Ed. 1947), 129, Section 19, The Code Cause of Action.

secondary, right. This definition, reminiscent of the common-law forms of action, equates a cause of action with each legal theory a plaintiff may have to redress an injury even though arising from a single wrongful act. This view has found disfavor with most courts and authorities because it perpetuates the pleading of legal theories instead of "a statement of facts constituting a cause of action in ordinary and concise language." See Section 2309.04, Revised Code.

2. "[T]he facts from which the plaintiff's primary right and the defendants corresponding primary duty have arisen, together with the facts which constitute the defendant's delict or act of wrong"[2] give rise to a cause of action. This concept omits the remedial right and duty of the first definition, thereby emphasizing substantive rights as distinct from procedural rights. It is concerned with the wrongful act and not with the theory of recovery.

3. A cause of action is a group or aggregate of operative facts, limited "to a single occurrence or affair, without particular reference to the resulting legal right or rights."[3] This so-called "factual unit" theory places the emphasis upon the breadth of the transaction or occurrence rather than the particular right of the plaintiff which has been infringed. The broadest in scope, this definition compels the pleader to include in his petition all elements of the transaction or occurrence at the risk of splitting his cause of action.

The operative effect of these three concepts may be illustrated as follows: If the defendant wrongfully takes plaintiff's chattel and in the ensuing struggle strikes him, the "secondary right" concept would allow a cause of action in replevin followed by one in trover for the conversion, the second suit being barred only by recovery in the

---

[2]See Pomeroy, Code Remedies (5 Ed.), 527, Section 347, Remedy. Elements of every judicial action. Elements constituting cause of action. Pomeroy is the leading exponent of this view.

[3]Clark, *supra*, 130.

first. Thereafter, plaintiff could proceed on his cause of action in battery.

Under the second concept, defendant committed two wrongful acts, each constituting a cause of action. Applying the third, but one cause of action results, since both acts took place during a single occurrence.

This court has previously adhered to the "primary right—primary duty" concept, looking to the defendant's wrongful act. *Fielder* v. *Ohio Edison Co.*, 158 Ohio St. 375, 382-383. The rule of that case that "an administrator's cause of action for pain and suffering of his decedent may not be joined with a cause of action for the wrongful death of the same decedent" has been overturned by the inclusion of paragraph (K) in Section 2309.05, Revised Code, effective September 22, 1955. Nevertheless, the reasoning of the case, that two duties were breached, one owed to the decedent and the other to his widow and next of kin, is still valid.

However, multifold aspects of the same wrongful act, *i. e.*, negligence consisting of several concurrent acts, do not permit multiple suits. *Schweinfurth* v. *C., C., C. & St. L. Ry. Co.*, 60 Ohio St. 215; *Cohen* v. *Bucey*, 158 Ohio St. 159. Consonant with the same theory, this court has held that "where a person suffers both personal injuries and property damage as a result of the same wrongful act, only a single cause of action arises, the different injuries occasioned thereby being separate items of damage from such act." *Rush* v. *Maple Heights*, 167 Ohio St. 221. The rationale is that *"as the defendant's wrongful act is single, the cause of action must be single."* (Emphasis supplied.) *Rush* v. *Maple Heights, supra*, 230.

We are obliged, then, to determine whether the case now before us involves the same wrongful act as that from which the defendant was exonerated by the former judgment between these parties. Prior to the admission of evidence in *Henderson* v. *Prentke et al.*, the trial judge announced: "Let the record show that following a conference in chambers with counsel for the active defendants

here present, counsel for plaintiff states positively that he makes no claim of liability based upon negligence on the part of any of the defendants." Thereupon, that trial proceeded as an action for fraud and deceit. The court considered only whether defendant made a false representation with knowledge or with utter disregard as to its truth or falsity.[*]

In this action, the trial court found Ryan to have been negligent as Henderson's attorney in failing to inform **Henderson** of Goldendale's insolvency after becoming aware of it. The court further held that Ryan should have investigated the reasons for the unpaid and overdue accounts receivable. These acts of negligence are distinct from the fraud alleged in the prior case and occurred at a different time. Here, Ryan was found to have failed in the performance of his professional duties as Henderson's attorney. The acts for which the prior suit was brought were not alleged to have been committed in furtherance of his professional duties.

Both *Henderson* v. *Prentke et al.*, and this case were filed, tried and determined prior to the repeal of Section 2309.06, Revised Code (131 Ohio Laws 1677, effective July 20, 1965), which provided: "The causes of action united as provided in Section 2309.05 of the Revised Code must not require different places of trial, and, except as otherwise provided, *must affect all the parties to the action.*" (Emphasis supplied.) The purpose of that statute was "to prohibit the joinder of causes of action which do not affect all the real parties to the action in the same interest." *Fielder* v. *Ohio Edison Co.*, 158 Ohio St. 375, 382; approved by and followed in *Huggins* v. *John Morrell & Co.*, 176 Ohio St. 171, 175. Under the rule in effect at the time of the commencement of this action, a single suit against Ryan and others for fraud and deceit and against Ryan alone for negligence would have united causes of action not af-

---

[*]For elements of deceit see Restatement of the Law, Torts, Section 525; Prosser on Torts (3 Ed.) 700, Section 20.

fecting all the parties and would have constituted a misjoinder of causes of action. On the other hand, we are aware of no rule at the time (and none has been called to our attention) requiring the plaintiff to forego the joinder of Ryan with all the other parties against whom he claimed fraud and to join his cause of action in fraud against Ryan with that in negligence in a single suit.

*Cincinnati* v. *Emerson*, 57 Ohio St. 132, may give rise to the impression that that case, if adhered to, compels us to adopt such a rule. The majority of this court, however, believes otherwise. In that case, Emerson was confronted with an assessment against his real estate. *"The assessment was an entirety; he had two distinct grounds of attack upon it."* (57 Ohio St. 132, 141.) In his first action, he set forth one of those grounds, and at his own election, joined with him other parties *as plaintiffs*; and *"to enable him to do so, he omitted from his petition in that action, the particular grounds of relief advanced in the second action."* (57 Ohio St. 132, 143; emphasis supplied.) That election, which proved fatal to the pursuit of the second action, was between "two courses of procedure" (57 Ohio St. 132, 142) to assail a single assessment against a single defendant. Quite obviously, Emerson deliberately divided his attempt to abort the assessment into two phases, and voluntarily embraced his co-assessees in the first assault, which was advanced not at all, legally, by the inclusion of the additional plaintiffs. Thus, his strategy, being wholly transparent, failed.

In the case at bar, Henderson considered himself aggrieved by the alleged fraud of Ryan and several others, as well as by the alleged dereliction of Ryan as his attorney. That the former allegation was unfounded while the latter proved true is a fact apart from the issue here. The membership of the present court, as well as that which decided *Cincinnati* v. *Emerson*, surely must agree that Henderson was not permitted to join both allegations against all the parties involved. That he was compelled to pursue Ryan on both counts in one suit and in the other to risk whatever

contribution to the result therein the absence of Ryan might produce, was not decided in *Cincinnati* v. *Emerson*.

On the other hand, as we have already pointed out, Section 2309.05, Revised Code, relating to joinder of causes of action, is no longer limited by the provisions of former Section 2309.06, Revised Code. Furthermore, subsequent to the commencement of these actions, the General Assembly enacted Section 2307.191, Revised Code (130 Ohio Laws 649, effective August 26, 1963), providing in part:

"* * * All persons may be joined in one action as defendants if there is asserted against them jointly, severally, or in the alternative, any right to relief in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all of them will arise in the action. A plaintiff or defendant need not be interested in obtaining or defending against all the relief demanded. *Judgment may be given for one or more of the plaintiffs according to their respective rights to relief, and against one or more defendants according to their respective rights to relief, and against one or more defendants according to their respective liabilities.*" (Emphasis supplied.)

Thus, the Code no longer contains any impediment to the joinder of causes of action of the kind asserted by the plaintiff in this case. The statutory changes reflect a constantly developing policy in the pursuit of simplified pleading and procedure. To save time and to relieve court congestion, parties are encouraged, if not commanded, to litigate all their claims in one action, except to the extent that joinder of multifarious and complex issues would produce confusion and prejudice. Defendants and the courts are thus saved from vexation caused by multiple litigation.⁶

Accordingly, our decision affirming the judgment of the Court of Appeals in this case may not be dispositive of a

⁶James, Civil Procedure, *supra*, 552-557; Clark, Code Pleading, *supra*, 137-148; 65 Harvard Law Review 820, 824-831, Developments in the Law of *Res Judicata*.

similar question in an action commenced subsequent to the repeal of Section 2309.06, Revised Code, and after the enactment of Section 2307.191, Revised Code.

*Judgment affirmed.*

MATTHIAS, O'NEILL, HERBERT and BROWN, JJ., concur. TAFT, C. J., and ZIMMERMAN, J., dissent.

TAFT, C. J., dissenting. In my opinion, our syllabus and our decision and also the reasons stated therefor in the opinion in *Cincinnati* v. *Emerson* (1897), 57 Ohio St. 132, 48 N. E. 667, require reversal of this judgment and final judgment for defendant. As a reading of the report of that case will clearly demonstrate, every reason advanced for the judgment being rendered in the instant case was thoroughly considered and definitely rejected by the decision of this court in that case.

In quoting from the Restatement of the Law, Judgments 159, the majority opinion apparently concedes that, if the instant case "is based upon the same cause of action as that upon which the first action was based," judgment should be rendered for defendant.

In determining "what constitutes a cause of action" within the meaning of that term as there used, the majority opinion describes "three general views." I find the following description of those views, quoted from Fleming James, Jr., Civil Procedure (1965), 553 (cited by the majority opinion as the latest source thereof) more understandable than that stated in the majority opinion:

"* * * (1) Those which define it in terms of the remedial right which is being enforced and limit it to a single right. This is the narrowest * * * definition. It comes close to an attempt to carry forward the formularly system of the common law. It would, in effect, let a plaintiff who had a single injury arising out of a single occurrence, bring as many suits as he could devise legal theories of recovery—

40

at least until he succeeded in one of them. (2) Those which define 'cause of action' in terms of a single * * * breach of a primary duty. * * * This test * * * limits a cause of action in terms of the primary right or rights invaded. These are the rights given by substantive law as distinguished from the remedial or procedural rights emphasized by the first test. Because of this * * * limitation, it is possible for a single line of conduct or occurrence to give rise to two or more causes of action. It will do so when it happens to invade two or more primary rights, even of the same party. (3) Those which give the term 'cause of action' a purely factual content. Probably the framers of the codes had some such test in mind, for the complaint was to state the 'facts constituting a cause of action,' and the court was to apply whatever legal theories or characterizations it found to be appropriate to the facts pleaded and proved. Those who would define 'cause of action' in factual terms do not, however, all agree upon the size of the factual grouping which should be held to constitute a single cause of action, and therefore to support only a single lawsuit. The narrowest version of this view would require that the same evidence support both actions. A broader version, however, would not require identity of evidence but would define 'cause of action' broadly to include the group of operative facts pragmatically determined [*i. e.*, determined from a practical standpoint] by the court as those which should be treated as a unit, having in mind the dictates of trial convenience, the intention of the parties, the needs of business practice, and the like.''

Prior to *Norwood* v. *McDonald* (1943), 142 Ohio St. 299, 52 N. E. 2d 67, this court had consistently adopted a broad version of the third view defining a cause of action in factual terms, *i. e.*, a broad version of what the majority opinion refers to as the ''factual unit theory.'' *Cincinnati* v. *Emerson, supra* (57 Ohio St. 132); *Covington and Cincinnati Bridge Co.* v. *Sargent* (1875), 27 Ohio St. 233, 238, and paragraph one of the syllabus.

Although the *Norwood case* adopted the so-called ''fac-

tual unit theory," it may be questionable whether it properly applied that theory when it held that a separate cause of action was involved in each of the two actions there involved. However, that it definitely adopted that theory is apparent from paragraph four of the syllabus of the case which reads:

"To determine whether a second action is based upon the same cause of action as that litigated in a former action claimed to be a bar to the second action under the doctrine of *res judicata*, the primary tests are the identity of investitive facts creating the right of action in each case; the identity of the evidence necessary to sustain each action; and the accrual of the alleged rights of action at the same time."

On its facts, the *Norwood case* is wholly different from the instant case. The first action there tried was one to establish that the plaintiff was the equitable owner of real estate, because he had paid the consideration for a conveyance thereof to defendant's decedent so that there was a resulting trust thereof for plaintiff. In the second action, plaintiff claimed that he was the common-law spouse, and, as a result, sole heir of that decedent. Obviously, the evidence offered in the first case was almost wholly different from that in the second case. This is stressed in the opinion.

In the instant case, even plaintiff's brief conceded "that the *claims of each petition* are *ex delictu* and *grounded on a single factual background*" and "there was identity of subject matter in the two petitions."

In my opinion, therefore, if the previous decisions and pronouncements of law by this court are followed, they require the conclusion that the instant action, to recover damages on the ground that they were caused by defendant Ryan's negligence, is based on the same cause of action as was the previous action to recover those same damages on the ground that they were caused by the fraud and deceit of defendant Ryan. In the first action, Ryan's activities are characterized as involving fraud and deceit:

42

and, in the instant action, the same activities are characterized as involving negligence.

The majority opinion in the instant case states that, in *Fielder* v. *Ohio Edison Co.* (1952), 158 Ohio St. 375, 109 N. E. 2d 855, 35 A. L. R. 2d 1365, "this court * * * adhered to" the second of the above described three views as to what constitutes a cause of action, *i. e.*, what it refers to as the "primary right—primary duty concept." In my opinion, there is absolutely nothing in the syllabus or in the four-to-three decision of that case which will support that statement.

However, this so-called "primary right—primary duty concept" was specifically approved in paragraph four of the syllabus of *Vasu* v. *Kohlers, Inc.* (1945), 145 Ohio St. 321, 61 N. E. 2d 707; but later disapproved and rejected when that syllabus paragraph was specifically overruled in *Rush* v. *Maple Heights* (1958), 167 Ohio St. 221, 147 N. E. 599.

Another decision of this court which is inconsistent with the so-called "primary right—primary duty concept" is *Schweinfurth* v. *C., C., C. & St. L. Ry. Co.* (1899), 60 Ohio St. 215, 54 N. E. 89, where paragraph six of the syllabus reads in part:

"A petition * * * which states all the material facts of the transaction or occurrence resulting in the person's death, contains but one cause of action, though they comprise a number of co-operating acts and omissions, some of which were willful or intentional, and others the negligent failure to observe proper care."

Also, in *Cohen* v. *Bucey* (1952), 158 Ohio St. 159, 107 N. E. 2d 333, paragraph two of the syllabus reads:

"An amendment of a petition alleging negligent injury of the plaintiff by the defendant by adding thereto allegations characterizing such injury as willful or intentional does not have the effect of stating an additional cause of action, such amendment may be made in the interest of justice after the expiration of the time limited for the prosecution of such an action, and such amendment

relates back to the time when the action was commenced.
* * *,,

The majority opinion and the syllabus in the instant case eventually base their determination for the plaintiff upon a conclusion that ''a single suit against Ryan and others for fraud and deceit and against Ryan alone for negligence would have united causes of action not affecting all the parties and would have constituted a misjoinder of causes of action.''

In doing this, the majority apparently had in mind that (as suggested by Fleming James, Jr., Civil Procedure, *supra*, 556) a descriptive term such as ''cause of action'' does not itself furnish the reasons why the factual unit under the third or so-called ''factual unit theory'' should be limited by any given boundary, ''and that these reasons are to be sought in terms of the practical and policy goals which a procedural system should seek to attain, rather than in terms of the verbal concepts which should be simply the tools of the system.''

These practical and policy goals are described in Fleming James, Jr., Civil Procedure, *supra,* as follows (see also, to the same effect, the opinions in *Cincinnati* v. *Emerson, supra* [57 Ohio St. 132] and *Covington and Cincinnati Bridge Co.* v. *Sargent, supra* [27 Ohio St. 233, 238]):

''Wherever there will be a large overlap of issues or evidence if two trials are held, it is wasteful to society and harassing to the adversary to have more than one, and there should be no more than one unless there is some very good reason.''

Apparently, the majority find that ''good reason'' in the inability of the plaintiff to join in the first action any claim for negligence against Ryan with plaintiff's claim for deceit and fraud against Ryan and others.

In my opinion, this conclusion, that there could be no such joinder, is an incorrect conclusion. *Meyer* v. *Cincinnati Street Ry. Co.* (1952), 157 Ohio St. 38, 104 N. E. 2d 173 (permitting joinder of action for damage or injury claimed to have been proximately caused by independent

but concurrent wrongful acts of two defendants, one of whom was under common-law duty to exercise only ordinary care and the other of whom, a common carrier, was under duty by contract to exercise the highest degree of care). See also *Schweinfurth* v. *Railway Co., supra* (60 Ohio St. 215), and *Cohen* v. *Bucey, supra* (158 Ohio St. 159).

Even if we assume that there could not be such joinder, this court, in a comparable situation and after thorough consideration, rejected that as a reason for refusing to apply *res judicata. Cincinnati* v. *Emerson, supra* (57 Ohio St. 132). See, in addition to the syllabus and decision, 57 Ohio St. at 134, 135, 136, 141, 142, 143.

ZIMMERMAN, J., dissents for the reason that plaintiff could and should have "put all his eggs in one basket" in his first action against defendant Ryan and others. By failing to do so, he was precluded from a second go at Ryan on a basis which could and should have been asserted in the first place. Plaintiff and Ryan were adversaries at the first trial, and the evidence in both trials was of a similar nature. In short, a plaintiff should not be permitted to divide his cause of action, advancing one ground for recovery in the first action and, if he fails in that, proceed in a second action to accomplish a like objective, setting up another ground for recovery. He is required to lay all his cards on the table at once and may not resort to a piecemeal approach. The principle involved in a situation like the present one is exemplified in the case of *City of Cincinnati* v. *Emerson,* 57 Ohio St. 132, 48 N. E. 667.