## Cordemex v.
## Dayton Importers Corp.
*[Cite as 7 AOA 37]*

*Case No. 11489*
*Montgomery County, (2nd)*
*Decided September 7, 1990*

*Dennis L. Patterson and James C. Ellis of Bogin & Patterson, 1200 Talbott Tower, Dayton, Ohio 45402, for Plaintiff-Appellant.*

*Charles S. Goodwin and Nicholas C. Hollenkamp, 50 East Third Street, Dayton, Ohio 45402, for Defendants-Appellees.*

BROGAN, J.

In 1981 Dayton Importers, Inc. contracted with Cordemex, a Mexican twine exporter, for its 1982 supply of twine. Dayton Importers, Inc. (hereinafter "DIC") permitted the proceeds from the sale of the Cordemex twine to be loaned from DIC to Dayton Bag & Burlap, Inc. (hereinafter "DB&B").

DIC and DB&B were separate but affiliated companies which were owned and controlled by the Lumby family. When DB&B was unable to repay DIC, DIC was then unable to pay on the trade acceptances which were due to Cordemex.

On March 4, 1983 Cordemex filed suit against DIC and DB&B seeking a determination that the transfers of money from DIC to DB&B were fraudulent conveyances under R.C. 1336.04.

The matter was tried on April 8, 1985 before a referee who recommended that Cordemex be granted judgment against DIC in the amount of $2,358,947.19. The referee concluded the transfers of money by DIC to DB&B were not fraudulent conveyances. The trial court adopted the referee's report and recommendations and this court affirmed the trial court. See *Cordemex. S.A. De. C.V. v. Dayton Importers Corporation, et al.* (February 4, 1987), Montgomery App. 9826 unreported. Cordemex did not appeal that judgment.

The instant litigation began when Cordemex filed a complaint on May 7, 1987 against DIC and DB&B seeking a determination that an agreement entered into by DIC and DB&B whereby DIC in exchange for $175,000 would agree to forgo collection of nearly two million dollars in debt owed to it by DB&B until some uncertain date was fraudulent under the common law and/or a fraudulent conveyance per R.C. 1336.04.

The defendants moved to dismiss the complaint pursuant to Civ. R. 12(B) on the grounds that Cordemex's action is barred by the principles of *res judicata*, collateral estoppel, waiver and laches. In sustaining the defendants' motion to dismiss the trial court noted that "clearly, the subject matter of this subordination, agreement was at issue previously or certainly could have been at issue. *Res judicata* bars subsequent duplication of actions. Accordingly, defendant's motion to dismiss is granted.

In reversing the trial court this court held that the defendants should have been obliged to submit a responsive pleading and prove their claim of *res judicata. Cordemex v. Dayton Import-*

ers, *Corporation. et al.* (June 17, 1988), CA 10638, unreported.

DIC and DB&B then answered the complaint and raised numerous defenses including the defenses of res judicata, waiver, estoppel and laches. The defendants then moved for summary judgment and attached to their motion the affidavit of its counsel.

The trial court granted the defendant's motion for a summary judgment but offered no reasoning for its decision. Cordemex has appealed and asserts as its sole assignment that the trial court erred in granting the defendant's motion because there are existing issues of material fact which are in dispute.

Appellees admit they entered into the subject subordination agreement on September 30, 1983 which was attached as "Exhibit A" to the Cordemex complaint. Appellees argue however that they did not attempt to conceal this new financial arrangement between their corporations but that the information was contained in financial reports filed by the receiver appointed as an ancillary matter to this proceeding.

In the Fall of 1984, the Receiver filed two reports which make reference to DB&B balance sheet. Specifically, the report lists a "Subordinated Note Due" in the sum of $1,717,910.60. In November 1984, the Receiver filed his first accounting for DIC which lists on its balance sheet "amount due from affiliate - 1,706,074." None of this information shed any new evidence on the relationship between the defendant corporations and their financial dealings.

In March 1985, the Receiver filed a report containing DB&B's audited financial statements for the years ending 1984 and 1983. The following appears at footnote (9):

"(9) Subordinated Note.

There is due to Dayton Importers, Inc. a related company. This note is due September 30, 1988 and bears zero (-0-) interest until that date. The note is subordinated to all liabilities of Dayton Bag & Burlap Co."

The well established principles of res judicata and collateral estoppel operate to preclude the relitigation of matters which were or could have been determined by a prior proceeding between the same parties. Res judicata is often analyzed further to consist of two preclusion concepts: "issue preclusion" and "claim preclusion." Issue preclusion refers to the effect of a judgment in foreclosing relitigation of a matter that has been litigated and decided. Claim preclusion refers to the effect of a judgment in foreclosing litigation of a matter that never has been litigated, because of a determination that it should have been advanced in an earlier suit. Claim preclusion therefore encompasses the law of merger and bar. *Migra v. Warren City School District Board of Education* (1984), 465 U.S. 75, at 77 n. 1.

Clearly, the subject of the "agreement" of September 30, 1983 between the appellees was not litigated in the previous lawsuit. No reference was made to the agreement in the lengthy and exhaustive report of the referee nor in the trial court's judgment. The "agreement" itself was never provided by the defendants in accordance with the continuing duty to provide discovery "pertinent" to the lawsuit. Judge Kerns noted in our previous appellate opinion that "the generous terms of the subordination agreement were not subject to complete development at the time of the previous action." *Cordemex v. Dayton Importers Corporation et al.,* Case No. 10638, at page 4.

In *Norwood v. McDonald* (1943), 142 Ohio St. 301, the Ohio Supreme Court held that the rule that a judgment is conclusive not only as to what was determined therein but as to all issues which properly might have been determined therein is limited to cases involving a single cause of action. The court further held that a judgment in a former action does not bar a subsequent action where the causes of action are not the same even though each action relates to the same subject matter. The court further held that to determine whether a second action is based upon the same cause of action as that litigated in a former action claimed to be a bar, the primary tests are the identity of the investigative facts creating the right of action, the identity of the evidence necessary to sustain each action, and the accrual of the alleged rights of action at the same time.

In 1968, the Ohio Supreme Court dealt with the question of what constitutes a cause of action for preclusion purposes. In *Sharp v. Shelby Mutual Ins. Co.* (1968), 15 Ohio St. 2d 134, Chief Justice O'Neill (then Justice O'Neill) discussed at some length the term "cause of action" at pages 139-141 of the court's opinion:

"The term, 'cause of action,' has been subject to varying definitions by courts and text writers. See, e.g., *Henderson v. Ryan* (1968), 13 Ohio St. 2d 31, 233 N.E. 2d 506; James, Civil Procedure (1965), 552, Section 11.10; Clark, Code Pleading (2 Ed. 1947), 129, Section 119; Pomeroy, Code Remedies (5 Ed. 1929), 526, Section 346 et seq.

Three basic definitions of the term, 'cause of action,' have emerged.

"Under the theory which equates a cause of action with a remedial or secondary right, any conceivable legal theory of recovery constitutes a separate cause of action. In terms of the instant petition, the statement of a cause of action for damages for "wrongful withholding of funds due" constitutes a cause of action which is separate and distinct from the cause of action stated for damages for 'wrongful garnishment.' As two remedies are sought, two causes of action, by that definition, would be stated.

"The second theory has been described in terms of 'primary right - primary duty.' Under this theory, it is the breach of a primary right possessed by a plaintiff and its correlative, primary duty of defendant, which creates a cause of action. *Pomeroy, supra,* Section 347.

"An examination of the instant petition reveals that two reciprocal rights and duties are involved. In terms of plaintiff's rights, it is his right to be paid the money due on the insurance contract and his right to be free from 'wrongful garnishment,' which constitutes the primary rights allegedly breached. As to the defendants, it was the duty of Shelby to pay the amount admittedly due under its insurance contract, and it was the duty of Reliance to refrain from allegedly spurious legal action, which form the primary duties involved. It appears that, under this theory, plaintiff seeks to state two distinct causes of action.

"The final theory defines 'cause of action' as 'a group or aggregate of operative facts, limited "to a single occurrence or affair, without particular reference to the resulting legal right or rights." This so called "factual unit" theory places the emphasis upon the breadth of the transaction or occurrence rather than the particular right of the plaintiff which has been infringed.' *Henderson v. Ryan, supra,* at page 34. The limits of the theory were stated in *Vasu v. Kohlers, Inc.* (1945), 145 Ohio St. 321, 61 N.E. 2d 707 (overruled in part on another ground in *Rush v. Maple Heights* (1958), 167 Ohio St. 221, 147 N.E. 2d 599), where this court said, at pages 334 and 335:

"'*** One concept of the term, (cause of action) *** is to the effect that as long as the same wrongful act or transaction is the subject of litigation there is but one cause of action without regard to the application of rules of substantive law to additional or variational facts which are involved and which must be considered. The test under this concept is not whether added facts constitute a material difference in plaintiff's right or defendant's wrong under the substantive law, but whether such additional facts are so closely woven into the transaction which comprehends the defendant's wrong as to justify the court in regarding multiple interests affected and wrong done as a single unit for the purposes of litigation. ***

"'The other concept of a cause of action *** is to be found in the well known test that causes of action are the same if both actions are supported by the same evidence, and that two causes of action differ if the same evidence does not support both. *** '

"Under either branch of the 'factual unit' theory, the plaintiff does not state a single cause of action.

"The claim plaintiff makes against the two defendants are not supported by the same evidence. Moreover, the acts of the defendants do not lend themselves to treatment as a single unit. Neither defendant has any interest or stake in the claim of the other, nor would either defendant, for res judicata purposes, be bound by a determination of the rights or liabilities of the other."

The important test under this pragmatic concept is not whether the added facts are material under a different rule of law, but whether they are so closely tied up with the fact situation alleged in the first complaint as to justify the court to consider the two different situations as an operative unit. Schopflocher, *What is a Single Cause of Action for the Purpose of the Doctrine of Res Judicata,* Vol. 21 Ore. L. Rev. 319, 323 (1942).

In *Quality Ready Mix, Inc. v. Mamone* (1988), 35 Ohio St. 3d 224, the Ohio Supreme Court again reiterated that a prior judgment will not be afforded res judicata effect where the later proceeding to which it is sought to be applies involves different issues and different parties.

It is evident that determination of whether the September 30, 1983 "Agreement" constitutes a "fraudulent conveyance" necessarily involves different evidence than whether the earlier loans or transfers of funds were fraudulent conveyances. Appellants contend that the September 30, 1983 subordination agreement was a separate and distinct wrong perpetrated by the appellees against them and was a separate occurrence from the previously litigated matters.

We are constrained to agree with the appellant that the term "cause of action" cannot be

construed to cover the September 1983 agreement whereby the defendants altered the terms of DB&B's financial obligations with a new contractual agreement. The trial court was not justified in considering this new agreement as part of the unit of facts alleged in the first litigation between the parties.

Appellees argue that assuming, arguendo, that the doctrine of res judicata and collateral estoppel did not bar the present action by the appellants, certainly the principles of laches and waiver would serve to preclude Cordemex's new action against DIC and DB&B.

Laches is an equitable doctrine. In order to successfully invoke the equitable doctrine of laches, it must be shown that the person for whose benefit the doctrine will operate has been materially prejudiced by the delay of the person asserting his claim. *Smith v. Smith* (1959), 168 Ohio St. 447; *Wright v. Oliver* (1988), 35 Ohio St. 3d 10. No evidence of prejudice was submitted by the appellees in support of their motion for summary judgment. There was no evidence that the appellees lost any evidence which would support any defense or that they had changed their position in some material way because of a delay on the part of the plaintiff-appellants. See generally, *Fifth Third Bank v. West* (1988), 42 Ohio Misc. 26.

Appellees also contend that the appellants knowingly "waived" their right to assert the new claim because of their failure to amend their earlier complaint after evidence of the September 1983 agreement was alluded to in the footnote of the Receiver's report filed one month before the first trial. Certainly reasonable minds could differ on whether the appellees had established the defenses of laches and waiver in the evidentiary material submitted to the trial court. *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St. 2d 64.

The appellants assignment of error is sustained and the matter will be Reversed and Remanded to the trial court for further proceedings.

WOLFF, P.J., and WILSON, J., concur.