INDEPENDENT INSURANCE AGENTS OF OHIO, INC., Appellant,

v.

DURYEE, Superintendent, Appellee.

[Cite as *Indep. Ins. Agents of Ohio, Inc. v. Duryee* (1994), 95 Ohio App.3d 7.]

Court of Appeals of Ohio,
Franklin County.

No. 93APE09–1251.

Decided May 5, 1994.

8

*Emens, Kegler, Brown, Hill & Ritter, William J. Brown* and *Roger P. Sugarman,* for appellant.

*Lee Fisher,* Attorney General, and *Ava W. Serrano,* Assistant Attorney General, for appellee.

*Porter, Wright, Morris & Arthur, Anthony J. Celebrezze, Jr., H. Grant Stephenson, Kathleen M. Trafford* and *Michael J. Barren,* for *amicus curiae* Huntington Insurance Agency, Inc.

---

WHITESIDE, Presiding Judge.

Plaintiff-appellant, Independent Insurance Agents of Ohio, Inc., appeals from a dismissal by the Franklin County Court of Common Pleas of plaintiff's complaint and raises the following three assignments of error:

"I.   The trial court erred in dismissing this action in reliance upon the doctrine of *res judicata* because the cause of action contained in the complaint is dissimilar from the cause of action presented by and decided in *Independent Insurance Agents of Ohio, Inc. v. Fabe.*

"II.   The trial court erred in dismissing this action in reliance upon the doctrine of *res judicata* because the decision in *Independent Insurance Agents of Ohio, Inc. v. Fabe* did not adjudicate the merits of IIAO's challenge to the Superintendent's unconstitutional exercise of legislative power.

"III.   The trial court erred in dismissing this action because the factual allegations of the complaint, presumed to be true upon consideration of a motion to dismiss for failure to state a claim, entitle IIAO to declaratory and injunctive relief."

In 1992, the Ohio Supreme Court decided *Indep. Ins. Agents of Ohio, Inc. v. Fabe* (1992), 63 Ohio St.3d 310, 587 N.E.2d 814 (*"Independent Ins. Agents I "*). The syllabus of that case states as follows:

"1.   R.C. 3905.01(B) and 3905.04 do not prohibit the licensing of applicants affiliated with non-insurance financial institutions.

"2.   An applicant for a license as an other-than-life insurance agent is not precluded from licensure by R.C. 3905.01(B) and 3905.04 merely because an affiliate of the applicant would be precluded thereunder, unless the applicant is but the *alter ego* of the precluded affiliate."

Subsequently, Huntington Insurance Agency, Inc. ("Huntington"), which was not a party to the *Independent Ins. Agents I* case, filed a requisition for corporate agency member license for a fire and casualty insurance license in the state of Ohio with the Superintendent of the Ohio Department of Insurance.

Huntington is a wholly owned subsidiary of Huntington Insurance Services, Inc., a bank subsidiary corporation which is wholly owned by the Huntington State Bank, Alexandria, Ohio. The Huntington State Bank is a wholly owned subsidiary of Huntington Bancshares, Inc.

Plaintiff then filed this action in the Franklin County Court of Common Pleas, seeking declaratory and injunctive relief. Plaintiff sought an order declaring that the statute as construed in *Independent Ins. Agents I* is unconstitutional, since any determination made by the superintendent whether an applicant was the alter ego of a precluded affiliate would constitute an unconstitutional exercise of legislative power by the superintendent. Plaintiff also sought an order preliminarily and permanently enjoining the superintendent from making such a determination on Huntington's application until the General Assembly provides standards to guide the superintendent. Plaintiff contends that there are no standards developed to guide the superintendent in determining alter ego status and that, therefore, the superintendent is exercising legislative power.

Section 1, Article II of the Ohio Constitution vests all legislative power in the General Assembly and Section 26, Article II of the Ohio Constitution has been interpreted to prohibit the delegation of the power except where the General Assembly has provided sufficient, definite standards with which to use the power.[1] It is true that the General Assembly may not delegate its essential legislative functions, and attempts to do so are unconstitutional. In *Belden v. Union Cent. Life Ins. Co.* (1944), 143 Ohio St. 329, 28 O.O. 295, 55 N.E.2d 629, paragraph one of the syllabus, the Ohio Supreme Court declared that:

"The legislative power of the state is vested in the General Assembly by Section 1, Article II of the Constitution and that body may not abdicate or transfer to others the essential legislative functions with which it is vested."

Additionally, legislative acts which grant to a board or administrative agency quasi-legislative or quasi-judicial power are proper only if the General Assembly has provided sufficient standards within which the board or agency may make subordinate rules. *Belden*, paragraph three of the syllabus; *Am. Cancer Soc., Inc. v. Dayton* (1953), 160 Ohio St. 114, 125, 51 O.O. 32, 37, 114 N.E.2d 219, 225. An exception to the rule requiring "definite rules of guidance in restricting or

---

1. Section 1, Article II, Ohio Constitution provides:

"The legislative power of the state shall be vested in a general assembly consisting of a senate and house of representatives * * *."

Section 26, Article II, Ohio Constitution provides:

"All laws, of a general nature, shall have a uniform operation throughout the state; nor, shall any act, except such as relates to public schools, be passed, to take effect upon the approval of any other authority than the general assembly, except, as otherwise provided in this constitution."

limiting the exercise of such official action" has been recognized in "cases where the establishment of such criteria would be impossible or impracticable or result in rendering the enforcement of a police regulation nugatory or ineffective." *Matz v. Curtis Cartage Co.* (1937), 132 Ohio St. 271, 8 O.O. 41, 7 N.E.2d 220, paragraph seven of the syllabus, at 278–279, 8 O.O. at 44–45, 7 N.E.2d at 224–225.

Defendant filed a motion to dismiss, pursuant to Civ.R. 12(B)(6), for failure to state a claim for which relief can be granted, contending that the action was barred by the doctrine of *res judicata.* The Ohio Supreme Court has held in the syllabus of *O'Brien v. Univ. Community Tenants Union, Inc.* (1975), 42 Ohio St.2d 242, 71 O.O.2d 223, 327 N.E.2d 753, that:

"In order for a court to dismiss a complaint for failure to state a claim upon which relief can be granted (Civ.R. 12(B)(6)), it must appear beyond doubt from the complaint that the plaintiff can prove no set of facts entitling it to recovery."

The common pleas court determined that plaintiff could prove no set of facts entitling it to recovery and, therefore, dismissed the complaint stating as follows:

"Based on the Ohio Supreme Court's decision in *Independent Insurance Agents of Ohio v. Fabe* (1992), 63 Ohio St.3d 310 [587 N.E.2d 814], and based upon this court's determination that the Superintendent's interpretation of words in the English language would not be legislation, the motion to dismiss is SUSTAINED and this matter is dismissed. This decision, therefore, makes moot the motion to intervene on behalf of Huntington." [2]

It is from this decision that plaintiff now appeals.

Initially, it must be noted that *res judicata* is an affirmative defense under Civ.R. 8(C) and, thus, may not ordinarily be the basis of a Civ.R. 12(B)(6) motion. Being an affirmative defense, it necessarily involves information not required to be alleged in the complaint and, therefore, could not be determined by looking only at the complaint, as is required of a Civ.R. 12(B)(6) motion. The defense should have been raised initially by answer (Civ.R. 8[C]) and then by summary judgment motion. See *Nelson v. Pleasant* (1991), 73 Ohio App.3d 479, 482, 597 N.E.2d 1137, 1139; *Toledo v. Thomas* (1989), 60 Ohio App.3d 42, 572 N.E.2d 867; *Johnson v. Linder* (1984), 14 Ohio App.3d 412, 14 OBR 531, 471 N.E.2d 815. However, since the trial court determined the merits of the defense, we shall address the assignments of error.

The assignments of error are related and will be discussed together. Plaintiff contends that the trial court erred in dismissing this action in reliance upon the

---

2. Huntington had previously filed a motion to intervene. The Ohio Bankers Association also filed a motion to intervene on July 27, 1993, but the trial court failed to mention this motion in its decision, which was rendered two days later.

doctrine of *res judicata.* Plaintiff argues that this action presents different issues from those presented by and decided in *Independent Ins. Agents I, supra,* and that *Independent Ins. Agents I* also did not determine the constitutionality of the statute.

The parties argue that the basis for the trial court's decision is the doctrine of *res judicata.* The Ohio Supreme Court has defined *res judicata* in *Norwood v. McDonald* (1943), 142 Ohio St. 299, 305, 27 O.O. 240, 242, 52 N.E.2d 67, 71, quoting 30 American Jurisprudence (1940) 908, Judgments, Section 161, as follows:

" 'The doctrine of *res judicata* is that an existing final judgment rendered upon the merits, without fraud or collusion, by a court of competent jurisdiction, is conclusive of rights, questions and facts in issue, as to the parties and their privies, in all other actions in the same or any other judicial tribunal of concurrent jurisdiction.' "

The court continued:

" 'If, however, the two suits do not involve the same claim, *demand, and cause of action,* such effect will not be ordinarily given to the prior judgment.' * * * 30 American Jurisprudence, 914, Section 172. **To constitute a bar there must be identity not only of subject matter but also of the cause of action.** In other words, a judgment in a former action does not bar a subsequent action where the cause of action prosecuted is not the same, even though each action relates to the same subject matter." (Italics *sic;* boldface added.)

The court later approved and followed this definition in paragraph one of the syllabus of *Whitehead v. Gen. Tel. Co.* (1969), 20 Ohio St.2d 108, 49 O.O.2d 435, 254 N.E.2d 10.

Some writers discuss *res judicata* as having two aspects. The first aspect is generally what is known as the concept of *res judicata* and is sometimes referred to as "claim preclusion" or "claim bar." This concept is the effect of a prior judgment acting as a bar to a second action on the same claim—that is a bar to the entire action in subsequent litigation. The second aspect, frequently referred to as "issue preclusion" or "collateral estoppel," is the effect of a prior judgment precluding relitigation of specific issues in a second action between the same parties or their privies. It precludes issues determined in the first action from being relitigated in the second action. See Restatement of the Law 2d, Judgments (1982), Section 27; *Goodson v. McDonough Power Equip., Inc.* (1983), 2 Ohio St.3d 193, 2 OBR 732, 443 N.E.2d 978. *Res judicata* ("claim preclusion" or "claim bar") is the issue involved in this appeal.

Under *res judicata*, to determine whether a second action is the same as the claim for relief[3] in the first action and, therefore, barred by the prior judgment, "the primary tests are the identity of investitive facts creating the right of action in each case; the identity of the evidence necessary to sustain each action; and the accrual of the alleged rights of action at the same time." *Norwood, supra*, at paragraph four of the syllabus. That court also stated that "[w]hether different proofs are required to sustain the two actions is said to be the best and most accurate test in determining whether the former action is a bar." *Id.*, 142 Ohio St. at 311, 27 O.O. at 245, 52 N.E.2d at 73.

■ With these tests in mind, a comparison of the actions involved here reveals that there are two distinct claims for relief. The claim for relief in *Independent Ins. Agents I* was a declaratory judgment seeking an interpretation of R.C. 3905.01(B) and 3905.04. The question in that case involved whether applicants for insurance licenses are automatically precluded from licensure by R.C. 3905.01(B) and 3905.04 merely because an affiliate would be precluded. In fact, the Ohio Supreme Court framed the statement of the case as follows:

"Appellants, the Independent Insurance Agents of Ohio, Inc. and Thomas H. Hardy, filed a complaint against the Superintendent of Insurance and the Ohio Department of Insurance seeking a declaratory judgment that R.C. 3905.01(B) and 3905.04 prohibit the licensing of applicants affiliated with non-insurance financial institutions.   * * *

"The case was submitted to the trial court on stipulated facts. The trial court construed R.C. 3905.01(B) and 3905.04 to include the unwritten words 'or any affiliate thereof' and entered a judgment declaring:

" * * *

" 'DECLARED that Sections 3905.01, 3905.02, and 3905.04 of the Ohio Revised Code prohibit the licensing of *any affiliate* of a non-insurance financial or lending institution * * *.'   (Emphasis added.)

"The court of appeals reversed the judgment of the trial court and held that (1) there is no *per se* disqualification of applicants affiliated with the non-insurance financial or lending institutions, and (2) R.C. 3905.01(B) and 3905.04 do not apply to affiliates as they do to employers, employees and relatives, unless the applicant is but the *alter ego* of its affiliate." (Footnotes omitted; emphasis *sic*.) *Independent Ins. Agents I*, 63 Ohio St.3d at 310–311, 587 N.E.2d 814–815.

The court also stated at the beginning of the opinion, "The principal issue in this case is whether R.C. 3905.01(B) and 3905.04 prohibit the licensing of

---

3. The Civil Rules refer to "claims for relief." The two phrases are used interchangeably within the meaning of *Norwood*, and claim for relief will be used throughout the opinion.

applicants affiliated with non-insurance financial institutions." *Id.* at 312, 587 N.E.2d at 815. That claim for relief involved construing the statute to determine its meaning. The Ohio Supreme Court determined that an applicant is precluded only if it is the *alter ego* of a precluded affiliate.

Although the two claims involve the same statute, this case involves a different case or controversy. The first involved whether the statute itself precludes applicants affiliated with precluded corporations from receiving a license. This second action seeks a determination upon the statute's constitutionality. The issue of the constitutionality of the statute was not in issue, either directly or by implication, in the first action and was not determined by the court. To be a bar to a subsequent suit, a matter must have been put into issue in the first action and determined by that court. See *Taylor v. Monroe* (1952), 158 Ohio St. 266, 49 O.O. 118, 109 N.E.2d 271, paragraph three of the syllabus; *Lessee of Lore v. Truman* (1859), 10 Ohio St. 45. Actions may arise out of the same transaction or relate to the same subject matter, yet still not be *res judicata* because the causes of action are not the same. See *Norwood, supra*, 142 Ohio St. 299, 300, 27 O.O. 240, 240, 52 N.E.2d 67, 68–69, at paragraph two of the syllabus; *Henderson v. Ryan* (1968), 13 Ohio St.2d 31, 42 O.O.2d 65, 233 N.E.2d 506. Therefore, since the two causes of action are not the same, *res judicata* does not apply here as a bar to this claim for relief.[4]

■ The *amicus curiae* brief that was filed in this case raises another argument, that *res judicata* is applicable here because plaintiff had the opportunity to present the unconstitutional delegation argument in the first claim for relief but failed to do so. The brief quotes as follows:

" '[A] party must make good his cause of action or establish his defenses" * * * by all the proper means within his control, and if he fails in that respect, purposely or negligently, he will not afterward be permitted to deny the correctness of the determination, nor to relitigate the same matters between the same parties.' " *Johnson's Island, Inc. [v. Bd. of Trustees of Danbury Twp.* (1982), 69] Ohio St.2d [241] at 244 [23 O.O.3d 243, 245, 431 N.E.2d 672, 674–675] (quoting *Covington & Cincinnati Bridge Co. v. Sargent*, 27 Ohio St. 233 (1875) (syllabus 1)."

Even if the issue could have been raised before the Supreme Court in the previous action, it was not necessary to raise it. The issue of whether a statute is constitutional should generally not be raised for the first time in the Supreme

4. The dissenting opinion does not distinguish the two claims for relief as being separate but, rather, assumes without explanation either that (1) the same claim is involved in both causes of action, or (2) if there are separate claims, it was mandatory that the second be joined in the first claim for relief.

Court when it had not been raised or determined either in the trial court or the appellate court. The Supreme Court ordinarily does not consider constitutional issues neither raised nor determined in the court below. See *Clarington v. Althar* (1930), 122 Ohio St. 608, 174 N.E. 251; *State ex rel. Specht v. Oregon City Bd. of Edn.* (1981), 66 Ohio St.2d 178, 182, 20 O.O.3d 191, 193, 420 N.E.2d 1004, 1007.[5] Plaintiff was not required to raise the constitutionality issue in the previous action in the trial court and, therefore, was not required to raise it for the first time on appeal to the Supreme Court.

Additionally, this argument was addressed by the Ohio Supreme Court in *Norwood, supra,* 142 Ohio St. at 314, 27 O.O. at 246–247, 52 N.E.2d at 74–75. In that case the court stated:

"The trial court, as disclosed by the opinion above quoted, took the position that while the claim or cause of action litigated in the second action was not litigated or considered in the first action, it could have been and should have been so litigated, and that because this was not done the claim made in the present action is barred. *The court failed to recognize that the rule which it applied can apply only where there is a single cause of action involved in both suits.* Since there were two entirely separate and distinct causes of action involved in this litigation, the plaintiff was not required to prosecute them in one action." (Emphasis added.)

In *Norwood,* the plaintiff attempted to acquire a decedent's title to property through a trust. In the first action, the trial court dismissed the action, since the plaintiff had not established the existence of the trust by the required degree of proof. In the second action, plaintiff attempted to acquire the property as the sole heir at law, since he was decedent's common-law husband. The Ohio Supreme Court held that these were two separate causes of action, and the doctrine of *res judicata* was not applicable. Similarly, in the case at hand, *res judicata* is not applicable, since there are two separate claims for relief involved. Although arguably the two claims *could* have been joined in the first action, such joinder is permissive, not mandatory. See Civ.R. 18. As the Ohio Supreme Court stated in the eighth paragraph of the syllabus of *Norwood, supra:*

"While all claims of right embraced in a single cause of action must be prosecuted simultaneously, a litigant cannot be required to prosecute simulta-

---

5. The dissenting opinion recognizes the correctness of this principle in footnote 8 but fails to apply it to this case accurately. The dissenting opinion misstates the issue involved in this case, attempting to define it in footnote 8 as: "[T]he real issue in this case is *whether it was necessary to bring the constitutional claim in the first declaratory judgment action.*" (Emphasis sic.) Actually, the issue should be divided into two questions: (1) Is the constitutional claim a part of the original claim? and (2) If these are separate claims, was joinder of the claims mandatory? The dissenting opinion fails to address these questions.

neously in a single action multiple causes of action, even though they relate to the same subject matter."

In this case, the constitutional claim is not part of the first action, there are separate claims for relief, and the claim herein was not a claim which was mandatory to be joined in the first action.

The *amicus* brief cites *Johnson's Island, Inc. v. Bd. of Trustees of Danbury Twp.* (1982), 69 Ohio St.2d 241, 23 O.O.3d 243, 431 N.E.2d 672, as signifying that the Ohio Supreme Court has made no distinction between statutory interpretation claims and constitutional claims in terms of whether they have to be joined within one lawsuit.[6] That distinction is not germane to our conclusions. Additionally, no such distinction was made in *Johnson's Island*, and that case is inapplicable.

In *Johnson's Island*, the first action involved an injunction granted to enjoin a landowner's violation of a zoning law rejecting a "nonconforming use" defense to the application of the zoning law. Nearly a year later, the landowner filed a complaint in declaratory judgment seeking to void the injunction granted in the first case on the ground that the zoning law upon which the injunction was based was unconstitutional as applied to the landowner. The Ohio Supreme Court obviously found *res judicata* applicable.

■ Although applying *res judicata*, *Johnson's Island* is neither controlling nor applicable. Here, the constitutionality of the statute is not being raised as a defense to affirmative relief granted in a prior action so as to nullify that relief, as was the case in *Johnson's Island*. Plaintiff does not attempt to set aside the interpretation of the statute. Rather, it seeks a declaration of the constitutionality of the statute—there simply is no attack on the prior judgment, and any judgment herein would not be inconsistent with that in the first action.[7] Therefore, plaintiff's three assignments of error are all well taken.

For the foregoing reasons, all three of plaintiff's assignments of error are sustained, the judgment of the Franklin County Court of Common Pleas is

6. The dissenting opinion adopted and expanded this argument.

7. The dissenting opinion also relies upon other inapplicable cases. *Cincinnati ex rel. Crotty v. Cincinnati* (1977), 50 Ohio St.2d 27, 4 O.O.3d 83, 361 N.E.2d 1340, was cited for the proposition that constitutional issues must be raised in the first action, but the basis of the Supreme Court decision was that the common pleas court lacked jurisdiction over the complaint. *Id.* at 30, 4 O.O.3d at 85, 361 N.E.2d at 1342. *Canton, Ohio v. Maynard* (C.A.6, 1985), 766 F.2d 236, involved a defense to enforcement of the law and followed *Johnson's Island*.

reversed, and this cause is remanded to that court for further proceedings in accordance with law and consistent with this opinion.

*Judgment reversed*
*and cause remanded.*

JOHN C. YOUNG, J., concurs.

PETREE, J., dissents.

PETREE, Judge, dissenting.

I must respectfully dissent from the majority opinion because I am compelled to conclude that plaintiff is precluded from claiming in the instant declaratory judgment action that the insurance statutes in question are unconstitutional on nondelegation grounds, as plaintiff could have and should have litigated this issue in the first instance in *Indep. Ins. Agents of Ohio, Inc. v. Fabe* (1992), 63 Ohio St.3d 310, 587 N.E.2d 814 (*"Independent Ins. Agents I "*), its previous declaratory judgment action. Since the majority opinion appears to allow plaintiff to litigate the issue *ad infinitum* by way of declaratory judgment action, I simply cannot join it.

In *In re Christ Hosp.* (Mar. 24, 1994), Franklin App. No. 93AP–800, unreported, at 9–10, 1994 WL 97229, we recently recognized the common-sense principle that:

" * * * Though there is some question whether constitutional issues should be raised before an administrative agency incapable of ruling on the issue, see, *e.g.*, *In the Matter of: Hal Artz Lincoln–Mercury, Inc.* (Sept. 24, 1992), Franklin App. No. 91AP–1493, unreported [1992 WL 246014] (1992 Opinions 4238, 4252–4253), it is abundantly clear in any event that *constitutional issues should be raised at the earliest time, lest they be waived for future litigation under principles of res judicata. National Amusements, Inc. v. Springdale* (1990), 53 Ohio St.3d 60 [558 N.E.2d 1178.] * * * " (Emphasis added.)

Though *Christ Hosp.* involved successive administrative appeals instead of successive declaratory judgment actions, as is the case here, the Ohio Supreme Court dealt with facts similar to the instant action in *Cincinnati ex rel. Crotty v. Cincinnati* (1977), 50 Ohio St.2d 27, 4 O.O.3d 83, 361 N.E.2d 1340. There, Cincinnati citizens brought suit, alleging that the state water fluoridation laws violated both the First Amendment and the Equal Protection Clause. The Ohio Supreme Court, however, held that the suit was barred under *res judicata* because the constitutional issues could have been raised as defenses in an earlier court proceeding involving the enforcement of the fluoridation laws against Cincinnati.

A holding of similar import is found in the persuasive opinion of the United States Sixth Circuit Court of Appeals in *Canton v. Maynard* (C.A.6, 1985), 766 F.2d 236. There, after the city of Canton lost a state court administrative proceeding challenging an Ohio Environmental Protection Agency water fluoridation order, the city then turned around and sued in federal court under Section 1983, Title 42, U.S.Code, now claiming that the same agency order violated the Equal Protection Clause. Construing Ohio law on *res judicata* and the two branches of that concept—claim preclusion and issue preclusion—the Sixth Circuit Court of Appeals found that Ohio has consistently applied the claim preclusion branch of *res judicata* to issues which could have been raised as defenses to a plaintiff's claim in an earlier action. *Id.* at 238, citing *Stromberg v. Bd. of Edn. of Bratenahl* (1980), 64 Ohio St.2d 98, 100, 18 O.O.3d 343, 344, 413 N.E.2d 1184, 1186 (*per curiam*); *Johnson's Island, Inc. v. Bd. of Trustees of Danbury Twp.* (1982), 69 Ohio St.2d 241, 244–246, 23 O.O.3d 243, 245–246, 431 N.E.2d 672, 674–676; *Swenson v. Cresop* (1876), 28 Ohio St. 668. Indeed, applying *Norwood v. McDonald* (1943), 142 Ohio St. 299, 27 O.O. 240, 52 N.E.2d 67, which the majority relies on so much in the instant case, the Sixth Circuit Court of Appeals found that Canton had presented the "same cause of action" in the prior state court proceeding because the "facts necessary to sustain the claim" were *exactly the same* and had not changed. Rather, the city's newly minted equal protection argument was " * * * nothing more than a defense to enforcement of the fluoridation law that could have been raised in state court. *The factual issues in the cases are identical; the only question is the legal implication of those facts.*" (Emphasis added.) *Id.* at 238.

The instant case presents a nearly identical scenario. In *Independent Ins. Agents I,* plaintiff brought a declaratory judgment action to challenge the state's interpretation of R.C. 3905.01(B) because, at the request of the Superintendent of Insurance, 1988 Ohio Atty.Gen.Ops. No. 88–056 had been issued. That opinion in effect allowed banks to sell insurance through agencies that they owned. As a consequence, the superintendent issued Bulletin 89–1, which followed that opinion closely. Plaintiff's declaratory judgment action therefore challenged the official state interpretation of these statutes and was tried on stipulated facts in the common pleas court. That court accepted plaintiff's interpretation and held that bank "affiliates" could not sell insurance under the insurance statutes. However, on appeal to this court, we reversed and held that the foregoing statutes contained no *per se* disqualification of such affiliates. The Ohio Supreme Court ultimately affirmed the judgment of this court.

Plainly, plaintiff could have presented the argument in the trial court, in this court, or in the Ohio Supreme Court that the state's interpretation of the insurance statutes in question was unconstitutional on nondelegation grounds. In

the trial court, this would have been an alternative theory made along with plaintiff's statutory construction arguments. On appeal, the argument could have been raised defensively in the event that this court or the Ohio Supreme Court affirmed the judgment of the trial court. It is improper to suggest that, since plaintiff failed to bring the argument in the trial court, this would preclude this court or the Ohio Supreme Court from considering it.[8] The nondelegation doctrine is a challenge to the "facial validity" of a statute, requiring the court to theoretically examine the statutes and regulations as against the established constitutional doctrine. As such, this purely legal question did not have to be raised in the trial court as a prerequisite to appellate consideration. *In re Hal Artz Lincoln–Mercury, Inc.* (Sept. 24, 1992), Franklin App. No. 91AP–1493, unreported, 1992 WL 246014, citing *Cleveland Gear Co. v. Limbach* (1988), 35 Ohio St.3d 229, 520 N.E.2d 188, and *ComTech Systems, Inc. v. Limbach* (1991), 59 Ohio St.3d 96, 570 N.E.2d 1089. In other words, the nondelegation issue was not a challenge to the constitutionality of a statute as applied, such as discriminatory enforcement under the Equal Protection Clause, which would require evidence in order to rule upon the challenge. Accordingly, one must conclude that plaintiff could have presented its nondelegation argument in *Independent Ins. Agents I.*

Moreover, plaintiff should have presented that argument in that litigation. Under the "cause of action" analysis undertaken in *Canton v. Maynard, supra,* the "facts" of the instant case are the same between the parties and the only question concerns the "legal implications" of those facts. Hence, plaintiff was required by law to assert the instant nondelegation argument during prosecution of its "cause of action" challenging the state's official interpretation of the insurance statutes in question in *Independent Ins. Agents I.* There is simply no merit to distinguishing statutory interpretation "claims" from constitutional "claims," as the majority opinion apparently does here.[9] As is evident, these issues are purely legal questions that lawyers can efficiently and effectively

8. The majority opinion states that: "To be a bar to a subsequent suit, a matter must have been put into issue in the first action and determined by that court." Moreover, the majority opinion states that the "Supreme Court ordinarily does not consider constitutional issues neither raised nor determined in the court below." While in isolation these statements are true, the real issue in this case is *whether it was necessary to bring the constitutional claim in the first declaratory judgment action.* The majority simply cites the *Norwood* case and Civ.R. 18, the permissive joinder rule, to bolster the conclusion that plaintiff had a right to bring a declaratory judgment action on its own terms to challenge the statutory interpretation on constitutional grounds.

9. As noted by one eminent observer, to ask what might have been litigated in a former action is "to leave the workaday world and enter the wondrous realm of words." Cleary, Res Judicata Reexamined (1948), 57 Yale L.J. 339, 343.

present in one declaratory judgment action.[10] Since plaintiff failed to do so in its first declaratory judgment action, one can only conclude that this constitutional claim is precluded from being asserted at this late date.

Indeed, in *Johnson's Island, supra,* the Ohio Supreme Court made no such distinction [11] but instead expressly held in paragraph one of the syllabus:

"When in a prior injunction action brought to enjoin the defendant landowner's violation of a zoning law, the defendant asserts the affirmative defense of non-conforming use, *but does not assert the unconstitutionality of the law,* the landowner is, on the principle of *res judicata,* barred from later bringing a declaratory judgment action alleging such law to be unconstitutional." (Emphasis added.)

On balance, both substantial justice and judicial economy would be served if we conclude that plaintiff could have and should have alleged its nondelegation grounds in the first instance in its prior declaratory judgment action. Any other conclusion would allow a party to simply drag on purely legal challenges to prevent enforcement of a statute or regulation, limited only by litigation resources, creativity and the relatively weak rules on bringing frivolous claims. The "nondelegation of legislative power" argument here was discredited generally at the federal level after the Great Depression and New Deal "switch in time" of the United States Supreme Court. Indeed, *Schechter Poultry Corp. v. United States* (1935), 295 U.S. 495, 55 S.Ct. 837, 79 L.Ed. 1570, was the last federal case to invalidate an Act of Congress based on such reasoning.[12] Moreover, wins on this ground have been few and far between in Ohio as well. We should be wary of a rule which allows parties to continually bring *anything* in the way of constitutional arguments through declaratory judgment actions.

How many separate claims can be concocted on the basis of constitutional arguments in successive declaratory judgment actions under the majority opinion? The answer is "too many." The approach taken by the majority allows the

---

**10.** As noted by the Supreme Court of Ohio in *Independent Insurance Agents I,* 63 Ohio St.3d at 312–313, 587 N.E.2d at 815–816, this case involves a "turf battle" between commercial interests with "sophisticated legal and legislative advisors." There should be no doubt that armies of lawyers thought out the possible constitutional claims and how they could secure the most favorable result for their client, given the resources at hand. We must be mindful however of the *scarce* judicial resources that can be severely taxed by the creative imaginations of counsel.

**11.** Thus, while one could make the argument that all constitutional claims have to be brought in one lawsuit but statutory interpretation claims are separate for *res judicata* purposes, the *Johnson's Island* case made no such distinction. There is nothing in reasoning in the majority opinion that would not limit all constitutional claims to one suit.

**12.** I Rotunda & Nowak, Treatise on Constitutional Law (1992) 397, 398, Section 4.8, fn. 4.

party willing to litigate and litigate and litigate to ultimately prevail, at least to some degree—regardless of the outcome on the merits of the litigation. That result is both unfair and unsound and I cannot agree with it.

Accordingly, I would overrule plaintiff's assignments of error and affirm.