INDEPENDENT INSURANCE AGENTS OF OHIO, INC. ET AL., APPELLANTS, *v.* FABE, SUPERINTENDENT; OHIO SAVINGS & LOAN LEAGUE ET AL., APPELLEES.

[Cite as *Independent Ins. Agents of Ohio, Inc. v. Fabe* (1992), 63 Ohio St.3d 310.]

(No. 90–2106—Submitted November 19, 1991—Decided April 1, 1992.)

312

*Agee, Clymer, Morgan & Fulton Co., L.P.A.,* and *Philip Fulton; Jenner & Block, Jonathan B. Sallet* and *Ann M. Kappler,* for appellants.

*Vorys, Sater, Seymour & Pease, Suzanne K. Richards* and *James A. Yano,* for appellee Ohio Savings and Loan League.

*Jones, Day, Reavis & Pogue, John W. Zeiger* and *Darrell L. Dreher,* for appellee Ohio Consumer Finance Association.

*Jeffrey D. Quayle,* urging affirmance for *amicus curiae,* Ohio Bankers Association.

*Lee I. Fisher,* Attorney General, and *Jeanny M. Vorys,* urging affirmance for *amicus curiae,* Ohio Attorney General.

*Michael J. Petrucci* and *Kelly M. Morgan,* urging reversal for *amicus curiae,* Professional Insurance Agents Association of Ohio, Inc.

*Means, Bichimer, Burkholder & Baker Co., L.P.A., Craig D. Leister* and *Amy J. Girvin,* urging reversal for *amicus curiae,* Ohio Association of Life Underwriters, Inc.

QUILLIN, J. The principal issue in this case is whether R.C. 3905.01(B) and 3905.04 prohibit the licensing of applicants affiliated with non-insurance financial institutions. For the reasons that follow, we hold that the statutes permit such licensing.

## I

### Background

At the outset it should be recognized that the insurance industry is a mature, highly regulated industry with sophisticated legal and legislative

advisors. This case is part of a "turf battle" for insurance business. As observed by another court, there is "a huge commercial tug-of-war between the bank holding company industry on one hand and independent insurance agents and other insurance industry groups on the other." *Alabama Assn. of Ins. Agents v. Bd. of Governors* (C.A. 5, 1976), 533 F.2d 224, 231.

A great deal of appellants' brief (and also appellees' brief) is devoted to arguments as to whether it would be desirable to restrict the licensing of applicants affiliated with non-insurance financial or lending institutions. These are essentially public policy arguments that are more properly addressed to the General Assembly. Coercive "tied-sales" are already prohibited by R.C. 3933.04.

## II

### Principal Purpose Test

Pursuant to R.C. 3905.01(B) and 3905.04, the Superintendent of Insurance is authorized to deny or revoke a license when he determines that the principal purpose of an agent's[3] license is to solicit or place other-than-life insurance on the agent's own property or on the property of its relatives, employers or employees, or on the property of persons with whom the agent or its relatives, employers or employees maintain one or more of the legal relationships (*i.e.*, agent, custodian, etc.) enumerated in the statutes.

In applying the principal purpose test, the superintendent historically has considered a variety of factors including a comparison of the agency's sales to persons falling within one or more of the enumerated legal relationships with the agency's total sales. If the agency's sales to persons falling within one or more of the enumerated legal relationships amounts to fifty-one percent or more of the total premium volume for any one calendar year, then the agency will be presumed to be in violation of the principal purpose prohibition contained in R.C. Chapter 3905. See Bulletin 89–1. No one is challenging the superintendent's use of the fifty-one percent presumption.

R.C. Chapter 3905 is thus clear that there is no impediment whatsoever to licensure unless the "principal purpose test" is violated. It follows that the trial court's *per se* disqualification for licensure of all applicants affiliated with non-insurance financial or lending institutions has no legal support. The court of appeals was correct in reversing the trial court on the *per se* disqualification. Appellants have not appealed that ruling.

---

3. An agent may be, *inter alia*, a natural person or a corporation. R.C. 3901.19(A).

## III

### Directly or Indirectly

Appellants' main argument (that the word "affiliates" should be read into the statute, even though it is not there) is based on a strained application of the adverbial phrase "directly or indirectly," which does appear in R.C. 3905.04, but not in R.C. 3905.01.

We are guided by certain basic rules of statutory construction: "Words and phrases shall be read in context and construed according to the rules of grammar and common usage. * * *" R.C. 1.42. "[R]eferential and qualifying words and phrases, where no contrary intention appears, refer solely to the last antecedent * * *." *Carter v. Youngstown* (1946), 146 Ohio St. 203, 209, 32 O.O. 184, 186, 65 N.E.2d 63, 66. "It is a basic doctrine of construction that the express enumeration of specific classes of persons in a statute implies that the legislature intended to exclude all others." *Fort Hamilton–Hughes Memorial Hosp. Center v. Southard* (1984), 12 Ohio St.3d 263, 265, 12 OBR 342, 343, 466 N.E.2d 903, 905.

Appellants' argument that the General Assembly intended to include affiliates or subsidiaries within the restricted relationships is unpersuasive. There is no reason to believe that the General Assembly would omit relationships it intended to include. In fact, "affiliate of" is defined in an unrelated insurance statute, R.C. 3901.32(A). Likewise, R.C. 3953.21(B), another unrelated insurance statute, restricts "any subsidiaries thereof." So too, R.C. 3905.18, relating to life insurance agents, refers to the corporate applicant's shareholders. It is apparent that the General Assembly knows how to use these words when it so chooses.

We agree with the following analysis by the court of appeals:

" * * * [Appellants'] suggested construction would alter the plain and unambiguous language of R.C. 3905.04. The phrase 'directly or indirectly' modifies its antecedent, 'solicit, place or effect such insurance.' The statute restricts the indirect placement of insurance on property for which the applicant is an agent, custodian, vendor, bailee, trustee or payee. * * * [Appellants] would apply the words 'directly or indirectly,' which appear in the middle of the paragraph, to the list of relationships appearing at the end of the paragraph. Thus, under * * * [appellants'] construction, the statute would restrict the placement of insurance on property for which the applicant is directly or indirectly an agent, custodian etc. Such a construction is not in accord with the plain wording of the statute. The phrase 'directly or indirectly' cannot be moved from one place in a sentence to another as part of statutory construction."

Thus, the clear meaning of R.C. 3905.04 is that the superintendent shall refuse to grant and shall revoke a license to sell other-than-life insurance when the superintendent is satisfied that the principal use of the license is to solicit, place, or effect insurance directly or indirectly upon or in connection with:

(1) property of the applicant,

(2) property of the applicant's relatives, employers or employees,

(3) property for which the applicant is agent, custodian, vendor, bailee, trustee or payee, or

(4) property for which the applicant's relatives, employers or employees are agent, custodian, vendor, bailee, trustee or payee.

## IV

### Alter Ego

Appellants' secondary argument is that since the financial institution with which the applicant is affiliated would be prohibited from obtaining a license, then the applicant should likewise be prohibited.

The court of appeals correctly rejected this rigid approach, but, applying *State, ex rel. Johnson & Higgins Co., v. Safford* (1927), 117 Ohio St. 576, 159 N.E. 829, did declare that "[t]he *Safford* rule ultimately requires a case-by-case determination. Only where the specific facts of a given case indicate that the subsidiary is essentially the alter ego of its parent formed primarily for the purpose of circumventing state law, will the court disregard the corporate fiction in order to give effect to the statutory purpose and intent."

In *Safford,* the relator was an Ohio corporation organized for the purpose of acting as local agent of fire insurance companies in the writing and placing of contracts of indemnity in Ohio. A majority of the stock of relator was owned and controlled by a foreign corporation engaged in insurance business. Ohio law prevented the licensing of a non-resident. The Superintendent of Insurance refused to issue a license to relator. Relator brought a mandamus action against the superintendent to compel the issuance of a license. Based on the facts of that case, the court denied the writ concluding "that the relator company is but the *alter ego* of a nonresident insurance broker corporation desiring to write insurance in Ohio, but unable to obtain a resident license, and that the course pursued by it is but an attempt to do by indirection that which cannot be accomplished by direct legal methods." *Id.* at 583, 159 N.E. at 831.

We believe that the court of appeals correctly applied the *Safford* rule. Whether a particular applicant for a license is but the *alter ego* of an otherwise precluded entity requires a case-by-case analysis.

## V

### Conclusion

Based on the above, we hold that R.C. 3905.01(B) and 3905.04 do not prohibit the licensing of applicants affiliated with non-insurance financial institutions.

We further hold that an applicant for a license as an other-than-life insurance agent is not precluded from licensure by R.C. 3905.01(B) and 3905.04 merely because an affiliate of the applicant would be precluded thereunder, unless the applicant is but the *alter ego* of the otherwise precluded affiliate.

Accordingly, the judgment of the court of appeals is affirmed.

*Judgment affirmed.*

MOYER, C.J., STEPHENSON, DOUGLAS and WRIGHT, JJ., concur.

SWEENEY, J., dissents.

RESNICK, J., not participating.

EARL E. STEPHENSON, J., of the Fourth Appellate District, sitting for HOLMES, J.

DANIEL B. QUILLIN, J., of the Ninth Appellate District, sitting for H. BROWN, J.

SWEENEY, J., dissenting. Since I believe the majority has totally misconstrued the clear thrust of R.C. 3905.01(B) and 3905.04, I must respectfully dissent from the majority opinion.

In my view, 1988 Ohio Atty. Gen. Ops. No. 88–056, relied on by the Superintendent of Insurance in Bulletin 89–1 and embraced by the majority herein, has emasculated the statutory mandate set forth in R.C. 3905.04 as it relates to R.C. 3905.01. As cogently analyzed by the referee in the trial court below, the majority's holding will merely foster unfair and anti-competitive practices by non-insurance businesses:

" * * * The following scenario is employed to illustrate why, if permitted to proceed, the Department's proposal is violative of the aforementioned sections. Bank A, as a parent corporation, incorporates Agency B which, pursuant to R.C. 3905.01, applies to the Department of Insurance for agency licensing. Agency B is licensed by the Department. Consumer C goes to Bank A for financing of an automobile loan and is led to purchase automobile insurance from Agency B as an inducement so that the financing may be obtained from Bank A. Consumer C is a 'vendee' and quite possibly a

'principal' of Bank A. Bank A is the 'vendor' or 'agent' of Consumer C. Bank A is indirectly placing insurance on a party for which it is an 'agent' or 'vendor' in a particular transaction through its subsidiary/affiliate. This is a practice proscribed by R.C. Section 3905.04 as set forth above.

"The incentive for anti-competitive dealings under the foregoing factual scenario is clear. Bank A may encourage the use of Agency B through the use of lower financing rates or less stringent criteria for loan qualifications. The anti-competitive business environment likely to result from non-insurance businesses incorporating insurance agencies to provide homeowner's insur-- ance, motor vehicle insurance, and other forms of property and casualty insurance is antithetical to the business purpose rule upon which R.C. [Chapter] 3901 *et seq.* is grounded.

"In short, the proposal of the Department to license affiliates of non-insurance lending institutions and others outlined in 89–1 would work irreparable harm upon Plaintiff herein and should be enjoined. The proposal is contrary to the business purpose rule espoused by the Supreme Court in *State, ex rel. Federal Union Ins., v. Warner* [1934], 128 Ohio St. 261, 263 [190 N.E. 575, 576]. Moreover, the Department's proposed licensure of subsidiaries of non-insurance financial institutions is contrary to the provisions of R.C. 3905.01 and R.C. 3905.04 because such an issuance would permit the applicants to do indirectly what is prohibited directly by the statute."

As this court stated in *Warner, supra,* at 264, 190 N.E. at 577, "[i]t is well settled that the business of insurance is impressed with a public use, and that statutes designed to regulate such business should be *liberally construed* to effect the purpose to be served and to prevent and correct evils growing out of the conduct of such business." (Emphasis added.) Under this standard, I believe the "directly or indirectly" language of R.C. 3905.04 was designed to prevent affiliates or subsidiaries of non-insurance businesses from selling insurance. The majority ignores the liberal construction standard to be used in resolving insurance regulations in favor of merely choosing sides in the so-called turf battle for insurance business. Much more is at stake from a consumer standpoint than the majority is willing to acknowledge, as was pointed out in the referee's report to the trial court.

While the language of the statutes in issue was not artfully drafted, I believe the plain import of the language attempts to prevent banks and other entities from subtly coercing customers to purchase insurance from their affiliates or subsidiaries.

The majority dismisses such concerns as merely "public policy arguments that are more properly addressed to the General Assembly." However, such facile reasoning abdicates this court's constitutional role in interpreting stat-

utes already promulgated by the General Assembly, and ignores the broad central purposes under which R.C. 3905.01 and 3905.04 were enacted.

Based on the foregoing, I would reverse the judgment of the court of appeals below and reinstate the trial court's judgment.