**The STATE of Ohio, Appellant,**

**v.**

**CONGER, Appellee. (Two cases.)**

[Cite as *State v. Conger* (1994), 97 Ohio App.3d 91.]

Court of Appeals of Ohio,
Jackson County.

Nos. 712, 713.

Decided Sept. 16, 1994.

*Oths & Heiser, Joseph A. Oths* and *Christopher J. Regan,* for appellants.

*Charles A. Gerken,* Special Prosecuting Attorney, for appellees.

FAIN, Judge.

Defendants-appellants Joe and Mary Lou Conger appeal from their convictions and sentences for attempted tampering with ballots in violation of R.C. 3599.26.

The Congers contend that on the undisputed facts they are not guilty as a matter of law. They further contend that the statutes under which they were prosecuted, R.C. 3505.24 and 3599.26, are unconstitutionally vague.

We reject the Congers' interpretation of the applicable statutes. We find the statutes not unconstitutionally vague. Accordingly, the judgment of the trial court is affirmed.

I

The parties have stipulated the following material facts:

"On May 15, 1992, at the residence of Elector James L. Ewing, the Defendant, Joe Conger and the Defendant, Mary Lou Conger, engaged in the marking of the absentee ballot of James L. Ewing for the Republican Primary Election. Said ballot was then returned to the Jackson County Board of Elections by U.S. Mail. James L. Ewing acquiesced in this activity. At the time of the marking of the ballot, James L. Ewing was not physically infirm or blind and the Defendants were neither related to James L. Ewing nor officials or employees of the Jackson County Board of Elections."

Although the Congers were initially indicted upon four counts, the state dismissed all but one count and amended the remaining count to reflect a charge of attempted tampering with ballots in violation of R.C. 3599.26. The Congers made an oral motion to dismiss based upon their contention that the statute is unconstitutionally vague.

The Congers' motion to dismiss was overruled, and the above-quoted stipulation of facts was entered into. The Congers then pled no contest, were found

guilty, and judgment was entered accordingly. The Congers appeal from their convictions and sentences.

## II

The Congers' first assignment of error is as follows:

"The appellants' due process rights under the Fifth and Fourteenth Amendments to the United States Constitution were violated when the trial court found them guilty of amended count one of the indictments since R.C. 3599.26 and 3505.24 were not applicable to the facts of this case."

R.C. 3599.26 provides, in pertinent part, as follows:

"No person shall * * * mark a ballot of an elector except as authorized by section 3505.24 of the Revised Code * * *."

R.C. 3505.24 provides as follows:

"Any elector who declares to the presiding judge of elections that he is unable to mark his ballot by reason of either illiteracy or physical infirmity may receive the assistance of two election officials of different political parties. If a physical infirmity is apparent to the judges to be sufficient to incapacitate the voter from marking his ballot properly, the elector may, upon request, be aided by a near relative who shall be admitted to the booth with such elector, or he may receive the assistance in the marking thereof of the two officials of elections belonging to different political parties, and they shall thereafter give no information in regard to this matter; except that a blind person, as defined under section 4511.47 of the Revised Code, may be accompanied in the voting booth and aided by any person of his choice. Any judge may require such declaration of inability to be made to the elector under oath before him. Such assistance shall not be rendered for other causes and no candidate whose name appears on the ballot shall assist any person in marking that person's ballot."

The Congers contend that R.C. 3505.24 applies only to instances in which electors are voting at polling places and, therefore, R.C. 3599.26 was intended to be limited in its application to tampering with ballots at polling places. The Congers cite R.C. 3509.05 and 3509.08 in support of this contention.

R.C. 3509.05(A) provides, in pertinent part, as follows:

"When an absent voter's ballot, pursuant to his application therefor, is received by the elector, he shall, before placing any marks thereon, note whether there are any voting marks on the ballot. In the event there are any voting marks, the ballot shall be returned immediately to the Board of Elections; otherwise, he shall cause the ballot to be marked * * *."

R.C. 3509.08(A) provides, in pertinent part, as follows:

"Any disabled or confined elector who declares to the two employees that he is unable to mark his ballot by reason of physical infirmity, and such physical infirmity is apparent to the employees to be sufficient to incapacitate the voter from marking his ballot properly, may upon request, receive the assistance of the two employees in marking his ballot and they shall thereafter give no information in regard to this matter. Such assistance shall not be rendered for any other cause. * * * "

The Congers contend that because R.C. 3509.05(A) allows a voter to "cause" an absentee ballot to be marked, a voter in the position of James L. Ewing could properly designate other people, like the Congers, to mark his absentee ballot. In arguing for this construction of the statutes, the Congers point out that criminal statutory provisions must be construed strictly against the state.

In construing a statute, a court's paramount concern is the legislative intent in enacting the statute. *State v. S.R.* (1992), 63 Ohio St.3d 590, 594, 589 N.E.2d 1319, 1322. Under Ohio law, it is a cardinal rule that a court must first look to the language of the statute itself to determine the legislative intent. *Shover v. Cordis* (1991), 61 Ohio St.3d 213, 218, 574 N.E.2d 457, 461; *S.R., supra,* 63 Ohio St.3d at 595, 589 N.E.2d at 1323. In interpreting a statute, words and phrases shall be read in context and construed according to the rules of grammar and common usage. *Indep. Ins. Agents of Ohio, Inc. v. Fabe* (1992), 63 Ohio St.3d 310, 314, 587 N.E.2d 814, 817; R.C. 1.42. Courts do not have authority to ignore the plain and unambiguous language of a statute under the guise of statutory interpretation, but must give effect to the words used. *State ex rel. Fenley v. Ohio Historical Soc.* (1992), 64 Ohio St.3d 509, 511, 597 N.E.2d 120, 122. In other words, courts may not delete words used or insert words not used. *Cline v. Ohio Bur. of Motor Vehicles* (1991), 61 Ohio St.3d 93, 97, 573 N.E.2d 77, 80.

R.C. 3599.26, one of the penalty provisions concerning violation of state election laws, is phrased in broad language that prohibits any person from marking "a ballot," which would include absentee ballots.[1] Despite appellants' contention to the contrary, R.C. 3505.24 is not limited in its application to voting at a polling place. Although there are two references in the statute to a voting booth, both of these references are directed to the situation in which a single individual of the elector's choosing accompanies the elector in the booth to provide necessary assistance to the voter, either because of blindness or some other physical incapacity. The statute provides more broadly that an elector may

---

1. The term "shall" in R.C. 3599.26 denotes that compliance with the commands of that statute is mandatory. See, *e.g., Ohio Dept. of Liquor Control v. Sons of Italy Lodge 0917* (1992), 65 Ohio St.3d 532, 534, 605 N.E.2d 368, 369.

receive the assistance of two election officials of different political parties when the elector is unable to mark his ballot by reason of either illiteracy or physical infirmity. The situation in which an elector is receiving the assistance of two election officials of two different political parties is not expressly restricted to acts of voting performed in a voting booth.

The evident purpose of the legislature is to guard against the possibility that undue influence may be brought to bear in connection with assisting an elector in casting his vote. The exercising of undue influence is guarded against in the case of an elector who is being assisted by a single individual both by the fact that the individual assisting the elector is of the elector's own choosing, and by the fact that the assistance is provided at a polling place under the watchful eye of officials, even if it is within a voting booth. Thus, the more heavy-handed attempts to persuade the voter to cast a vote in a specific manner would be likely to come to the attention of the election officials.

Where assistance is being provided at a venue other than a polling place, however, the legislature evidently intends that that assistance be provided by two election officials of opposite parties. This ensures an official presence even if the venue is a private home, as in this case, and reduces the likelihood that undue influence will be brought to bear, by virtue of the fact that the two assisting officials must be of opposite parties, so that each will operate as a check upon the other.

In view of the evident purpose underlying R.C. 3505.24, we do not find it to be ambiguous. We construe it to provide that whenever assistance is being rendered to a voter in a private setting, the assistance must be provided by two election officials of different political parties.

Assuming, for purposes of analysis, that the absentee ballot provisions of R.C. 3509.05(A) raise an issue as to whether the "cause the ballot to be marked" language conflicts with R.C. 3505.24, we note that the Supreme Court of Ohio in *Johnson's Markets, Inc. v. New Carlisle Dept. of Health* (1991), 58 Ohio St.3d 28, 35–36, 567 N.E.2d 1018, 1025, set forth the following general rules of statutory construction in considering several different statutory provisions:

"A number of basic rules must be followed by a reviewing court in construing the regulations and statutes at issue. First, all statutes which relate to the same general subject matter must be read * * * *in pari materia*, and construing them together, this court must give such a reasonable construction as to give the proper force and effect to each and all such statutes. * * * The interpretation and application of statutes must be viewed in a manner to carry out the legislative intent of the sections. * * * All provisions of the Revised Code bearing upon the same subject matter should be construed harmoniously. * * *

This court in the interpretation of related and co-existing statutes must harmonize and give full application to all such statutes unless they are irreconcilable and in hopeless conflict. * * *

"In the judicial interpretation of potentially conflicting laws, certain statutory rules of construction must be considered. As a threshold we observe that R.C. 1.47 provides:

" 'In enacting a statute, it is presumed that:

" '* * *

" '(C) A just and reasonable result is intended;

" '(D) A result feasible of execution is intended.'

"Another statutory rule of construction which must be considered if, and when, statutes being reviewed by a court are found to be in irreconcilable conflict, is R.C. 1.51, which states:

" 'If a general provision conflicts with a special or local provision, they shall be construed, if possible, so that effect is given to both. If the conflict between the provisions is irreconcilable, the special or local provision prevails as an exception to the general provision, unless the general provision is the later adoption and the manifest intent is that the general provision prevail.' " (Citations omitted.) See *Wray v. Wymer* (1991), 77 Ohio App.3d 122, 129, 601 N.E.2d 503, 508, where this court applied the foregoing analysis; cf., also, *Martin v. Martin* (1993), 66 Ohio St.3d 110, 114, 609 N.E.2d 537, 540.

▮ In construing R.C. 3509.05(A) *in pari materia* with R.C. 3505.24, it is manifest that the only occasion when a voter is allowed to have someone else mark the ballot, *i.e.*, "cause the ballot to be marked," is when the voter is unable to mark the ballot due to illiteracy or physical infirmity. This result, which gives effect to both statutory provisions and construes them harmoniously, is further supported by R.C. 3509.08(A), which specifies that assistance in marking absentee ballots "shall not be rendered for any other cause" besides "physical infirmity." See, generally, 37 Ohio Jurisdiction 3d (1992) 509, Elections, Section 163, fn. 70, where the authors appear to indicate that the R.C. 3509.08(A) provisions are substantially similar to the general assistance to voters provisions of R.C. 3505.24. Additionally, there does not appear to be any valid legislative justification to apply R.C. 3599.26 solely to polling place ballots and not to absentee ballots. Instead, the pertinent statutes indicate that assistance to voters in marking ballots in either case is largely prohibited except for those limited circumstances specified in R.C. 3505.24. See, also, R.C. 3509.08(A). Since the Congers did not come within the exceptions specified in R.C. 3505.24, the provisions of R.C. 3599.26 applied to their actions, *i.e.*, the voter was neither infirm nor illiterate,

and the common pleas court did not err in overruling the Congers' motion to dismiss.

The Congers' first assignment of error is overruled.

### III

The Congers' second assignment of error is as follows:

"Appellants' due process rights under the Fifth and Fourteenth Amendments to the United States Constitution were violated when the trial court failed to grant their motion to dismiss the amended count one of the indictment since R.C. 3599.26 and 3505.24 are constitutionally void for vagueness."

All legislative enactments enjoy a presumption of constitutionality, and before a court may declare the statute unconstitutional, it must appear beyond a reasonable doubt that the legislation and constitutional provisions are clearly incapable of coexisting. *State v. Gill* (1992), 63 Ohio St.3d 53, 55, 584 N.E.2d 1200, 1201; see, also, *Roseman v. Firemen & Policemen's Death Benefit Fund* (1993), 66 Ohio St.3d 443, 613 N.E.2d 574. Further, doubts regarding the validity of a legislative enactment are to be resolved in favor of the statute. *Gill, supra.*

In order to establish that a statute is unconstitutional in that it is void for vagueness, the challenging party must show that the statute is vague not in the sense that it requires a person to conform his conduct to an imprecise but comprehensible normative standard, but rather in the sense that no standard of conduct is specified at all. *State v. Anderson* (1991), 57 Ohio St.3d 168, 171, 566 N.E.2d 1224, 1226. In other words, appellants must prove beyond a reasonable doubt that the statute was so unclear that they could not reasonably understand that it prohibited their acts in marking the absentee ballot. *Id.;* see, also, *S. Euclid v. Richardson* (1990), 49 Ohio St.3d 147, 150, 551 N.E.2d 606, 608. The following factors must be applied in examining the void-for-vagueness doctrine:

" '* * * These values are first, to provide for fair warning to the ordinary citizen so behavior may comport with the dictates of the statute; second, to preclude arbitrary, capricious and generally discriminatory enforcement by officials given too much authority and too few constraints; and third, to ensure that fundamental constitutionally protected freedoms are not unreasonably impinged or inhibited. Proper constitutional analysis necessitates a review of each of these rationales with respect to the challenged statutory language.' " *State v. Collier* (1991), 62 Ohio St.3d 267, 270, 581 N.E.2d 552, 554, citing *State v. Tanner* (1984), 15 Ohio St.3d 1, 3, 15 OBR 1, 3, 472 N.E.2d 689, 691.

In analyzing these factors, we are persuaded that the relevant statutes provide sufficient warning that no person shall mark another person's ballot in the absence of the limited circumstances set forth in R.C. 3505.24. Although related provisions, *i.e.,* R.C. 3509.05(A), may have been drafted with greater specificity, it is axiomatic that in order to be enforceable, legislation need not be drafted with scientific precision. *Collier, supra,* 62 Ohio St.3d at 270, 581 N.E.2d at 554; *State v. McCallion* (1992), 78 Ohio App.3d 709, 713, 605 N.E.2d 1289, 1291. Second, we are not persuaded that the statutes, when properly construed, create a risk of arbitrary or discriminatory enforcement. Finally, we discern no unreasonable impingement on the Congers' constitutional freedom of association, as they contend on appeal, since the public interest of avoiding any perceived illegality in the election process supports the prohibition against marking ballots except in the special, limited circumstances set forth by statute. The Congers have not established the unconstitutional vagueness of R.C. 3599.26 and 3505.24 beyond a reasonable doubt. Consequently, we hold that R.C. 3599.26 and 3505.24 are not unconstitutionally vague.

The Congers' second assignment of error is overruled.

## IV

Underlying the Congers' brief and assignments of error is the implicit argument, although never explicitly raised, that this couple was simply providing assistance to a voter, at the voter's request, without any realization that this might offend Ohio's election laws, and, indeed, with an understanding that their conduct was within the realm of normal political activity in Jackson County. Admittedly, the construction of the statute pursuant to which the Congers were convicted is not free from difficulty. Admittedly, the Congers may lack the mental culpability normally associated with an offense of this magnitude. However, these are arguments better addressed to the executive authority in seeking a pardon in accordance with the constitutional authority vested in the Governor.

## V

Both of the Congers' assignments of error having been overruled, the judgments of the trial court are *affirmed.*

*Judgments affirmed.*

Young and Grady, JJ., concur.

Mike Fain, and Frederick N. Young, JJ., of the Second Appellate District, sitting by assignment.