OPINION
 "1. The lower Court's September 25, 1997 Judgment Entry, finding the Defendant-Appellant City of Toledo in contempt of the 1982 Consent Decree and modifying the 1982 Consent Decree, rendered without a hearing on the matter, violates Revised Code Section 2705.05(A).
 "2. The lower Court's September 25, 1997 Judgment Entry, which incorporated its August 15, 1997 Opinion-Judgment Entry, is not sup ported by fact and is contrary to law."
This case originated in 1982 when appellees, the Old West End Association, et al., filed a taxpayers' action for injunctive relief which sought an order requiring appellant and others to enforce a zoning ordinance. The ordinance at issue provided that no "environmental changes" could be made to any property within a historic district unless a certificate of appropriateness had been issued by the Historic District Commission of the district in question. Absent the issuance of a certificate of appropriateness, the city was forbidden to issue a building permit. As a result of those proceedings, the lower court, on May 5, 1982, entered a consent decree which found that the city had issued a building permit contrary to law. The consent decree then provided in pertinent part:
 "NOW, THEREFORE, it is agreed by and between the parties and now, therefore, it is so ORDERED that subject to Sections 9-28-9 and 9-28-11 of the Toledo Municipal Code:
 "1. Defendants * * * are hereby enjoined from any further violations of Chapter 9 Article XXVIII of the Toledo Municipal Code.
 "2. No environmental changes shall be made to any property within a historic district in the City of Toledo unless a Certificate of Appropriateness has been previously issued by the appropriate Historic District Commission.
"* * *
 "5. This Court shall retain continuing jurisdiction of this action to ensure compliance with this ORDER and will entertain further requests for injunctive relief brought by any party to restrain any further violations of Chapter 9, Article XXVIII of the Toledo Municipal Code."
Thereafter, in 1985, appellants issued a building permit for a project in the Old West End neighborhood without the prior issuance of a certificate of appropriateness. On September 25, 1985, appellees filed a motion for an order to show cause why appellants should not be held in contempt for their violation of the consent decree. On November 22, 1985, the court filed a judgment entry which reflected a stipulation by the parties to amend the original consent decree. That entry stated in relevant part:
 "(4) The Consent Entry dated May 5, 1982, shall be amended to provide that from the date of this order henceforth, the Defendants shall require all demolition contractors and other persons seeking permission to demolish buildings within the Historical Districts of the City of Toledo to obtain a written demolition permit in advance of any action in furtherance of the demolition of property. No demolition permit within a historical district shall be issued, or if issued, shall be valid, until a written approval is attached thereto by the Historical District Commission within which the property is located."
On January 23, 1987, appellees filed a motion for an order to show cause regarding the granting of a building permit by the city which appellees asserted was contrary to a certificate of appropriateness which had been issued by the Old West End Historic District Commission. As a result of that action, the trial court, on June 3, 1987, filed a judgment entry further amending the consent decree of May 5, 1982. That entry reads in relevant part:
 "(3) In the event that a builder, contractor, subcontractor, developer or any other applicant for a Certificate of Appropriateness (1) violates the terms or conditions set forth in a Certificate of Appropriateness, or (2) deviates in any way (whether material or not) from the plans and/or specifications submitted to and approved by the appropriate Historic District Commission, under no cir cumstances shall the Defendants or any of them, including, but not limited to the Commissioner of Inspection of the City of Toledo, the Division of Inspection of the City of Toledo, or the Toledo Plan Commission either:
 "(a) retroactively approve an amendment to a previously issued Certificate of Appropriateness; or
 "(b) grant a new Certificate of Appropriateness the effect of which would be to retroactively approve environmental changes to any property within a historic district in the City of Toledo that was undertaken or accomplished in violation of an original Certificate of Appropriateness;
"* * *
 "(5) No demolition permit within a historical district shall be issued, or if issued, shall be valid, until countersigned by the Chairman of the Historic District Commission within which the property is located. However, pursuant to Toledo Municipal Code, Section 1153.10(b), nothing in this Consent Decree shall be construed to prevent the authorized municipal officers from abating public nuisances as defined in Sections 1353.01 and 1353.02 of the Toledo Municipal Code."
On January 26, 1996, Steven Herwat, Commissioner of Building Inspection, was notified by a resident of the Old West End that a sale of windows from the property at 526 W. Delaware in the Old West End historic district was to he held the following day. At this time, the property was in the estate of Chester A. Ustaszewski but the Toledo Catholic Diocese was the record owner of the property. Accordingly, John Widmer, principal planner of the Toledo-Lucas County Plan Commission, contacted Reverend Robert Donnelly about the proposed sale. Donnelly assured Widmer that only interior windows would be removed and sold. Nevertheless, Widmer told Donnelly to expect a letter about environmental changes and exterior windows. Similarly, Herwat contacted the attorney for the estate of Chester Ustaszewski and informed her that the removal of any "exterior architectural elements (e.g. exterior windows)" constituted an environmental change, as defined by the Toledo Municipal Code Chapter 1153, which required the issuance of a certificate of appropriateness. He further warned her that any action to remove exterior elements without a certificate of appropriateness was a violation to Toledo Municipal Code Chapter 1153 and a second degree misdemeanor. He then urged her to secure the necessary certificate of appropriateness prior to removing any exterior elements from the property.
Despite the above warnings, on January 29, 1996, the sale took place at which both interior and exterior elements of the house, specifically, interior and exterior leaded glass windows, were sold. On March 8, 1996, the city of Toledo, Department of Neighborhoods, sent Richard Ustaszewski, the executor of the estate of Chester Ustaszewski, a letter informing him that an inspection of the property revealed that he was in violation of Toledo Municipal Code Section 1153.06(a) for the removal of exterior windows. The letter informed him that such environmental changes could not take place without the issuance of a certificate of appropriateness, urged him to obtain the necessary certificate prior to the removal of any exterior elements from the house, and instructed him as to how to obtain the certificate. The letter then ordered him to correct the violation within three days of the notice and warned him that the failure to correct the violation would result in a criminal charge being filed. Finally, the order notified him of his right to appeal the order to the Administrative Board of Zoning Appeals. The record reveals that Mr. Ustaszewski did appeal that order but does not reveal the outcome of that appeal.
Shortly thereafter, on March 12, 1996, the city of Toledo, Department of Neighborhoods, issued a determination of public nuisance regarding the property at 526 W. Delaware. The notice was served on the Catholic Diocese and ordered it to:
 "Repair leading edge, doors, roofing, front rear stairs/steps, floors, ceiling, walls repair/replace basement windows repair, scrape paint all exposed wood."
The notice ordered the Diocese to abate the nuisance by April 25, 1996 and instructed the Diocese of its right to appeal; however, it further informed the Diocese that an appeal did not stay the order to abate the nuisance. The Diocese evidently appealed this order but, again, the record does not reveal the outcome of that appeal.
On March 25, 1996, the Diocese applied for a certificate of appropriateness to demolish the house at 526 W. Delaware. In response, appellees, on April 8, 1996, filed a motion for a temporary restraining order and order to show cause. Specifically, appellees alleged that either the Ustaszewski estate or the Toledo Catholic Diocese made environmental changes to the property at issue without obtaining a certificate of appropriateness from the Old West End Historic District Commission in clear violation of section 1153.06(a) of the Toledo Municipal Code. Appellees then sought an order enjoining the city of Toledo and the Old West End Historic District Commission from entertaining the Diocese's application for a certificate of appropriateness to demolish the property until the unlawfully removed architectural artifacts were returned and the property was restored to the condition it was in prior to the unlawful environmental changes. Appellees further sought an order requiring the city of Toledo to show cause why it should not be held in contempt for its failure to issue an order to both the current and former owners of the property ordering them to reinstall the illegally removed archi tectural artifacts and restore the property to the condition it was in prior to their removal. In requesting these orders, appellees urged the court to enter an order modifying the consent decree by defining a prohibited environmental change to expressly include the removal of any interior fixture or architectural artifact from a structure in a historic district.
On August 15, 1997, the lower court issued an opinion and judgment entry granting appellees the relief requested. Specifically, the court interpreted section 1153.02(j) of the Toledo Municipal Code which defines the term "environmental change." The court held that "environmental change" includes any "exterior alteration, [interior or exterior] demolition, [interior or exterior] removal or new construction of any property requiring a building permit[.]" The court then found appellees' motions well taken and ordered them to prepare and submit a proposed judgment entry. Subsequently, appellant objected to appellees' proposed judgment entry finding the city in contempt for a violation of the consent decree. Specifically, appellant asserted that the proposed entry did not encompass the necessary elements for a final appealable contempt order. In response, appellees filed a modified order which simply addressed the motion for a temporary restraining order and appellees' request that the court once again modify the consent decree. On September 26, 1997, the trial court filed a judgment entry which ordered that the consent decree of May 5, 1982 be modified to read as follows:
 "No environmental changes shall be made to any property within a historic district in the City of Toledo unless a Certificate of Appropriateness has been previously issued by the appropriate historic district commission. Prohibited environmental changes shall include the removal or alteration of any historic material or distinctive architectural feature including, but not limited to, stairs, elevators, hand rails, balusters, ornamental columns, cornices, base boards, doors, doorways, windows, mantel pieces, paneling, lighting fixtures, molding, stained glass, tile, and original plaster. The removal of such an original material, architectural features, and hardware may be permitted by the Historic District Commission where essential to re-establish structurally safe conditions."
The court then ordered appellant and all persons in active concert or participation with it to refrain from undertaking any action inconsistent with that entry, the consent decree of May 5, 1982, or the judgment entry of June 3, 1987. The court did not find the city in contempt of the prior decree. It is from that judgment that appellant now appeals.
In its first assignment of error, appellant asserts that the trial court erred in finding the city in contempt of the 1982 consent decree. As established above, the record is clear that the judgment appealed to this court did not find the city in contempt of the original consent decree. Accordingly, the first assignment of error is not well-taken.
In its second assignment of error, appellant challenges the trial court's expansion of the definition of "environmental change" as that term is to be applied to Chapter 1153 of the Toledo Municipal Code.
Toledo Municipal Code section 1153.06(a) provides that "[n]o contractor, owner or other person shall make any environmental changes to any property within an historic district unless a valid written Certificate of Appropriateness has been previously issued by the respective historic district commission." The consent decree of May 1982 reinforces this requirement. The trial court's consideration of this case, and our review of this appeal, center on the definition of the term "environmental change."
 "`In construing a statute, a court's paramount concern is the legislative intent in enacting the statute. * * * In determining legislative intent, the court first looks to the language in the statute and the purpose to be accomplished.' State v. S.R. (1992), 63 Ohio St.3d 590, 594-595 * * *. Words used in a statute must be taken in their usual, normal or customary meaning. R.C. 1.42; Indep. Ins. Agents of Ohio, Inc. v. Fabe (1992), 63 Ohio St.3d 310, 314 * * *. In construing a statute, it is the duty of the court to give effect to the words used and not to insert words not used. S.R., supra, 63 Ohio St.3d at 595 * * *. `Where the language of a statute is plain and unambiguous and conveys a clear and definite meaning, there is no need to apply rules of statutory interpretation. * * * However, where a statute is found to be subject to various inter pretations, a court called upon to interpret its provisions may invoke rules of statutory construction in order to arrive at legislative intent.' Cline v. Ohio Bur. of Motor Vehicles (1991), 61 Ohio St.3d 93, 96 * * *." State ex rel. Cassels v. Dayton City School Dist. Bd. of Edn.
(1994), 69 Ohio St.3d 217, 220.
The Toledo Municipal Code section 1153.02(j) defines an "environmental change" as "* * * any exterior alteration, demolition, removal or new construction of any property, requiring a building permit subject to the provisions of this chapter." Because it is unclear whether the word "exterior" is meant to modify the word "alteration" or the words "demolition" and "removal" as well, we find that Toledo Municipal Code section 1153.02(j) is ambiguous and requires us to look to the language of the entire statute to determine the legislature's intent. Ohio State Bd. of Pharmacy v.Frantz (1990), 51 Ohio St.3d 143, 145.
The term "alteration," is defined in Toledo Municipal Code section 1153.02(c) as "* * * any change requiring a building permit involving the exterior architectural features, including significant landscaping, of any property which lies within an historic district, not including demolition, removal or new construction." (Emphasis added.) Accordingly, the term "alteration" is, by definition, modified by the term "exterior." As such, the legislature must have intended the term "exterior" in Toledo Municipal Code section 1153.02(j) to modify the terms "demolition" and "removal," and the lower court erred in expanding the definition of "environmental change" to include interior demolition and removal.
Our conclusion is further bolstered by other provisions of Chapter 1153 of the Toledo Municipal Code. Section 1153.12(d) of the code reads in pertinent part:
 "A. The following standards for rehabilitation are used by the Secretary of the Interior when determining if a rehabilitation project qualifies as "certified rehabilitation" pursuant to the Tax Reform Act of 1976 and the Revenue Act of 1978. These standards are a section of the Secretary's `Standards for Historic Preservation Projects' and appear in Title 36 of the Code of Federal Regulations, Part 1208 (formerly 36 CFR Part 67). These `Standards for Rehabilitation' are adopted pursuant to Section 1153.05(c) and shall be complied with within the City." (Emphasis added.)
The statute then states verbatim those sections of the Secretary's standards which it adopted. Under the heading "GUIDELINES FOR APPLYING THE SECRETARY OF THE INTERIOR'S STANDARDS FOR REHABILITATION," the statute reads:
 "B. The following guidelines are designed to help individual property owners formulate plans for the rehabilitation, preservation and continued use of historic buildings consistent with the intent of the Secretary of the Interior's `Standards for Rehabilitation.' The guidelines pertain to buildings of all occupancy and construction types, sizes, and materials. They apply to permanent and temporary construction on the exterior of historic buildings as well as new attached or adjacent construction." (Emphasis added.)
The trial court cited the Secretary's Standards for Rehabilitation covering recommended preservation approaches of interior
building features in support of its decision. Those standards, however, were clearly not adopted by the Toledo City Counsel. Rather, the counsel only adopted a "section" of the standards,i.e. those that apply to the exterior of historic buildings.
Finally, section 1153.05 of the Toledo Municipal Code creates the historic district commissions and grants those commissions the authority to review certificates of appropriateness. In addition, the statute requires the commissions to establish standards and guidelines and to judge certificates of appropriateness using those standards and guidelines. Toledo Municipal Code section 1153.05(c) reads in relevant part:
 "The standards and guidelines shall include, but not be limited to, the following exterior architectural and design considerations:
"(1) Structural proportion;
"(2) Foundations of structures;
"(3) Exterior walls;
"(4) Building height;
"(5) Building width;
"(6) Roof type;
"(7) Building material;
"(8) Exterior architectural features;
"(9) Paving or walkways;
"(10) Significant landscaping fixtures;
 "(11) Color or colors of the exterior as related to color or colors of surrounding buildings." (Emphasis added.)
Accordingly, when judging a certificate of appropriateness, the historic district commission is only empowered to consider the exterior elements of the building because the commission is only empowered to enact standards and guidelines covering those exterior elements.
Reading Chapter 1153 of the Toledo Municipal Code in its entirety, we can only conclude that the term "environmental change" means "any exterior alteration, [exterior] demolition, [exterior] removal or new construction of any property, requiring a building permit subject to the provisions of this chapter." Accordingly the trial court erred in expanding the definition of "environmental changes" to include interior demolition and removal, and the second assignment of error is well-taken.
On consideration whereof, the court finds that substantial justice has not been done the party complaining and the judgment of the Lucas County Court of Common Pleas is reversed in part and affirmed in part. The court's order modifying the consent decree of May 5, 1982 by expanding the definition of "environmental changes" is reversed. The court's order that appellant and all persons in active concert with it refrain from undertaking any action inconsistent with the consent decree of May 5, 1982 or the judgment entry of June 3, 1987 is affirmed. Court costs of this appeal are assessed to appellees.
 JUDGMENT AFFIRMED, IN PART AND REVERSED, IN PART.
 George M. Glasser, J.
 Melvin L. Resnick, J.
 James R. Sherck, J.
CONCUR.