JOURNAL ENTRY AND OPINION
{¶ 1} HWC Realty Inc. ("HWC"), successor to Vend-A-Wash Inc. ("Vend-A-Wash"),[1] appeals from the order of the trial court that terminated Vend-A-Wash's lease of the public laundry areas of the Hil-Roc Condominium ("Hil-Roc"). For the reasons set forth below, we affirm.
 {¶ 2} The record reflects that on September 4, 1992, Hil-Roc leased its public laundry areas of the condominium to Vend-A-Wash and authorized it to install laundry equipment. In relevant part the lease states as follows:
 {¶ 3} "This Lease shall remain in full force and effect for the full term of six (6) years, commencing on the 4th day of September 1992 and for successive additional terms of six (6) years thereafter, unless terminated by either the Lessor or Lessee by written notice sent registered mail, at least ninety (90) days but not more than one hundred twenty (120) days prior to the expiration of such terms as shall then be in effect * * *."
 {¶ 4} In a Lease Amendment, the parties further agreed that:
 {¶ 5} "Lessee hereby agrees to no price increase in the vend price except for when equipment is replaced. Either Lessee or Lessor may request the washers and dryers be replaced in the final year of the current term of this Lease. Upon replacement the commencement date shall be amended to the date of the final installation of the new machinery * * *.
 {¶ 6} "Lessee may increase the vend price when new machines are installed but not to exceed 60% of the increase in the consumer price increase from the previous price change."
 {¶ 7} From December 2003 through March 2004, Vend-A-Wash installed new washers and dryers at the condominium without obtaining Hil-Roc's prior approval. It also raised the vend price of using the machines. In a letter dated March 4, 2004, Vend-A-Wash sent Hil-Roc a Memorandum of Lease Renewal in which it asserted that the lease had been renewed, "as provided in the lease amendment dated 9/4/92 and previously exercised, by providing new machinery."
 {¶ 8} On March 18, 2004, Hil-Roc notified Vend-A-Wash by letter that it was terminating the lease but that Vend-A-Wash could bid on future contracts. Hil-Roc then filed a complaint against defendant for forcible entry and detainer and for breach of contract. The matter proceeded to trial before a magistrate. The magistrate concluded that Vend-A-Wash's unilateral replacement of appliances in 2003-2004 did not operate as a lease renewal. He concluded that although Hil-Roc's notice of termination was provided prior to the time set forth in the lease for doing so, defendant had "actual and adequate knowledge of Plaintiff's intentions."
 {¶ 9} The magistrate wrote:
 {¶ 10} "* * * [T]o require Plaintiff to wait and send another written notice 30 days later would be both hypertechnical and unconscionable. See McGowan v. DM Group IX (1982),7 Ohio App.3d 349 * * *."
 {¶ 11} Defendant filed objections and the trial court held a trial de novo. The App.R. 9(C) record filed with this court indicates that Hil-Roc's property manager, Christine Mack of Renner Management Group, testified that Hil-Roc's governing board authorized her to send the March 18, 2004 letter terminating the lease. There was no writing to establish such authority, however. The lease had been in effect for one six-year term and a renewal term of the same duration. She therefore determined that the lease expired on September 4, 2004. Her March 2004 notice of termination was, technically, premature since the lease required such notice to be provided between 90 to 120 days prior to the September 2004 expiration of the lease.
 {¶ 12} Anthony Stringer, president of Hil-Roc's board of managers, testified that the board authorized the March 18, 2004 letter sent by Mack. He did not produce minutes of the meeting, however. He acknowledged that Vend-A-Wash installed new washers and dryers before the notice of termination was sent but he noted that Vend-A-Wash did not request Hil-Roc's permission before doing so. He contrasted this with Vend-A-Wash's 1995 installation of new equipment, which was done after first obtaining Hil-Roc's written approval.
 {¶ 13} Stringer maintained that Vend-A-Wash breached the lease by installing new equipment in 2003-2004, and by raising the vend price without the prior approval of Hil-Roc. He admitted that Hil-Roc did not object to the installation of the new appliances but he testified that the process was gradual and that the board did not know what defendant was planning to do. He further established that the board sent notice of termination shortly after the installation was completed.
 {¶ 14} Harry Caplan of Vend-A-Wash testified that it was in Hil-Roc's best interest to obtain the new appliances. He further asserted that Vend-A-Wash was required to obtain Hil-Roc's permission "where installation of new equipment was not in the final year of the lease term." In the final year of the term, however, Caplan maintained that Vend-A-Wash had the right to "trigger a six-year renewal as of the completion of the installation of the new equipment on March 4, 2004" and that HilR-oc was also permitted to trigger a lease renewal by requesting the installation of new equipment.
 {¶ 15} Caplan additionally asserted that Hil-Roc did not promptly object to the installation of the new equipment which was completed on March 4, 2004. He noted that the new appliances cost tens of thousands of dollars which could not be recouped unless the lease remained in effect. He interpreted the March 18, 2004 letter as an "action to set into play lease renewal negotiations."
 {¶ 16} Thereafter, the court adopted the magistrate's findings and conclusions and it granted Hil-Roc a writ of restitution. Defendant now appeals and assigns three errors for our review.
 {¶ 17} Defendant's first and second assignments of error state as follows:
 {¶ 18} "The trial court erred and abused its discretion in granting Appellee's claim for injunctive relief."
 {¶ 19} "The judgment of the trial court is against the manifest weight of the evidence."
 {¶ 20} Because defendant has combined the arguments supporting these assignments of error, we shall likewise address them together.
 {¶ 21} As an initial matter, we note that an appellate court will not reverse a judgment as being against the manifest weight of the evidence where the judgment is supported by some competent, credible evidence going to all essential elements of the case. C.E. Morris Co. v. Foley Const. Co. (1978),54 Ohio St.2d 279, 376 N.E.2d 578, syllabus. That is, an appellate court should not substitute its judgment for that of the trial court when there exists competent and credible evidence supporting the findings of fact and conclusions of law rendered by the trial judge. Seasons Coal Co., Inc. v. Cleveland (1984),10 Ohio St.3d 77, 80, 461 N.E.2d 1273.
 {¶ 22} In this matter, defendant claims that Hil-Roc's notice of termination was ineffective because it was sent prior to the 90 to 120-day window set forth in the parties' lease (i.e., between May 7 and June 6, 2004). Defendant also maintains that when it installed new equipment in late 2003 and early 2004, a lease renewal was triggered and that since Hil-Roc did not promptly object, it is now estopped from claiming that the lease has been terminated.
1. Notice of Termination
 {¶ 23} Under R.C. 1923.02(A), proceedings in forcible entry and detainer may be instituted against tenants holding over their terms, otherwise in unlawful possession of the premises, or who have breached an obligation imposed upon them by a written rental agreement.
 {¶ 24} In this matter, the relevant lease language provided for the original six-year term, plus "successive additional terms of six (6) years thereafter, unless terminated by either the Lessor or Lessee by written notice sent registered mail, at least ninety (90) days but not more than one hundred twenty (120) days prior to the expiration of such terms."
 {¶ 25} It is undisputed that on March 18, 2004, Hil-Roc notified Vend-A-Wash that it was terminating the lease at the end of the term, i.e., on September 4, 2004. The notice should have been sent in May or June 2004, and was therefore, technically, premature.
 {¶ 26} We note, however that courts have applied a substantial compliance standard or have otherwise excused technical defects, in various cases involving notices of termination. In McGowan v. DM Group IX (1982),7 Ohio App.3d 349, 455 N.E.2d 1052, the court refused to apply a "hypertechnical" reading of the notice requirements set forth in the lease and instead considered whether the tenant substantially complied with the lease and whether the landlord was prejudiced by the tenant's actions. In that case, the tenant failed to notify the landlord in writing, and thirty days in advance, that he was vacating the premises. The court stated:
 {¶ 27} "The purpose of requiring written notice is not to be hypertechnical but, instead, to create certainty. Here, [lessors] were aware for several months of [lessee's] intent to terminate the tenancy as soon as possible. In fact, [lessee] testified that his payment of rent for the entire term was necessitated by [lessors'] refusal to make any effort to re-rent the premises earlier. At no time is there any indication that [lessors] advised [lessee] that they were going to insist upon written notice or a new month-to-month tenancy. To require same under the circumstances of this case would be unconscionable, even though the provision of the lease itself is not unconscionable. Rather, it is the action of lessors under the peculiar circumstances of this case which is unconscionable. There was clearly knowledge on the part of [lessors] of [lessee's] intent to vacate, and [lessors] were not prevented or delayed in finding a new tenant at the end of the term. In short, additional written notice would have served no purpose in this case. [Lessors] have attempted to take advantage of a hypertechnical construction and application of the lease agreement."
 {¶ 28} Courts have applied similar reasoning in cases where the landlord failed to meet the requirements of federal regulations in providing notice of termination. In RealProperties Servs. Mgt. v. Harigle (July 30, 1997), Crawford App. No. 3-96-21, the court found the landlord's notice of termination sufficient even where the notice did not inform the tenant that he could present a defense to the lease termination, and such notice was required under federal regulations since the unit was federally subsidized. The court held that the notice was sufficient because the tenant appeared at trial with counsel who presented a vigorous defense, and was therefore not prejudiced. Accord Alpha Pfi Alpha Home, Inc. v. Marshall (Mar. 4, 1999), Mahoning App. No. 96 CA 200; Commons v. King (Oct. 14, 1992), Montgomery App. No. 13159.
 {¶ 29} Similarly, in this matter, the written notice was provided approximately six weeks too early, in accordance with the parties' lease. However, the early notice gave Vend-A-Wash advanced notice of the landlord's intent. To conclude that an additional writing should have been sent within the 90 to 120-day window set forth in the lease would be hypertechnical. Hil-Roc substantially complied with the provision and Vend-A-Wash was not prejudiced by the earlier-than-contemplated notice. The trial court therefore did not err in determining that the March 18, 2004 letter was sufficient to notify Vend-A-Wash of termination of the lease.
2. Attempted Renewal through Replacement of Appliances
 {¶ 30} Defendant also asserts that by replacing washers and dryers in late 2003 and early 2004, without prompt objection from Hil-Roc, it unilaterally triggered the creation of a new lease.
 {¶ 31} The construction of written contracts is a matter of law. Alexander v. Buckeye Pipe Line Co. (1978),53 Ohio St.2d 241, 374 N.E.2d 146, paragraph one of the syllabus. A trial court's construction of a contract is reviewed de novo.Nationwide Mut. Fire Ins. Co. v. Guman Bros. Farm,73 Ohio St.3d 107, 108, 1995-Ohio-214, 652 N.E.2d 684.
 {¶ 32} When terms of a contract are unambiguous, courts look to the plain language of the document. Latina v. Woodpath Dev.Co. (1991), 57 Ohio St.3d 212, 214, 567 N.E.2d 262. The contract must also be interpreted as a whole, with "the intent of each part gathered from a consideration of the whole." Saunders v.Mortensen, 101 Ohio St.3d 86, 89, 2004-Ohio-24, 801 N.E.2d 452. Courts look to the language of the contract to determine the intent of the parties entering into the contract and words and phrases must be given their natural and commonly accepted meaning. Gomolka v. State Auto. Mut. Ins. Co. (1982),70 Ohio St.2d 166, 167-168, 436 N.E.2d 1347; U.S. Fidelity GuaranteeCo. v. Lightning Rod Mut. Ins. Co., 80 Ohio St.3d 584,1997-Ohio-311, 687 N.E.2d 717. In this matter, the relevant lease language states:
 {¶ 33} "Either Lessee or Lessor may request the washers and dryers be replaced in the final year of the current term of this Lease. Upon replacement the commencement date shall be amended to the date of the final installation of the new machinery * * *."
 {¶ 34} Defendant maintains that it needed Hil-Roc's permission to replace the appliances only "where installation of new equipment was not in the final year of the lease term." It further asserts that in other years it could unilaterally replace the appliances and thereby trigger a renewal of the lease. The trial court correctly rejected these claims as they are contrary to the plain language of the agreement and the natural and commonly accepted meaning of its terms. The agreement plainly states that "Either Lessee or Lessor may request the washers and dryers be replaced in the final year of the current term of this Lease" and thus clearly indicates that, upon obtaining authorization from the other, either party may request the replacement of the appliances and, in the event that this occurs, such replacement shall be in the final year of the lease. The language does not support defendant's interpretation.
 {¶ 35} Moreover, defendant's interpretation would contravene the "last antecedent" rule which states that referential and qualifying words and phrases, where no contrary intention appears, refer solely to the last antecedent. Indep. Ins. Agentsv. Fabe (1992), 63 Ohio St.3d 310, 314, 587 N.E.2d 814. That is, any qualifying words or phrases refer to the language immediately preceding the qualifier, unless common sense shows that it was meant to apply to something more distant or less obvious. Thus, the phrase the "final year" refers to the replacement of the appliances, and does not refer to or otherwise restrict the need to first make a request of the other party. No provision allows defendant to trigger a renewal of the lease by unilaterally replacing the appliances.
 {¶ 36} Defendant next maintains that Hil-Roc waived its right to object to the creation of a new lease term because it did not promptly object to the installation of the new appliances. The failure of a lessor to object in a timely manner to a breach of a lease agreement constitutes a waiver, estopping the lessor from setting up the breach as a basis for terminating the lease.Finkbeiner v. Lutz (1975), 44 Ohio App.2d 223, 226-227,337 N.E.2d 655, 657-658. In that case, the lessor accepted late payments from the lessee for nine years so he waived the right to assert that the latest late payment breached the lease. The court stated:
 {¶ 37} "Where a course of conduct is engaged in between the parties to a lease, which acts are contrary to specific provisions therein, such conduct will speak for itself, and the parties will be estopped from denying that conduct and its immediate logical consequences." See also Habegger v. Paul,
Wood App. No. WD-03-038, 2004-Ohio-2215 (objection not timely where it occurred fourteen months after alleged breach); GalaxyDev. v. Quadax, Inc., Cuyahoga App. No. 76769 (landlord was prohibited from collecting holdover rent because it accepted the original rental payment amount for seventeen months after the lease expired).
 {¶ 38} In this matter, the record indicates that Hil-Roc's board did not know what defendant was planning to do when the installation began in November 2003. The installation was complete on March 4, 2004, and approximately two weeks later, on March 18, 2004, Hil-Roc sent defendant the termination letter. Under these circumstances, the trial court correctly found no course of dealing or waiver which would estop Hil-Roc from terminating the lease.
 {¶ 39} Finally, we note that under defendant's interpretation of the lease, Hil-Roc's right to terminate the lease could be rendered meaningless, as any claimed lease renewal accomplished by installing equipment within the final year of the lease would necessarily subsume Hil-Roc's right to terminate within 90 to 120-days prior to the expiration of the lease.
 {¶ 40} The first and second assignments of error are without merit.
 {¶ 41} Defendant's third assignment of error states:
 {¶ 42} "The trial court erred and abused its discretion in admitting evidence excluded by hearsay and the Best Evidence Rule."
1. Hearsay
 {¶ 43} Defendant complains that Anthony Stringer introduced impermissible hearsay when he testified that the board authorized him to send the March 18, 2004 termination letter. The record does not indicate that this objection was raised in the trial court, however. We therefore do not consider it herein.
2. Best Evidence Rule
 {¶ 44} Defendant complains that the Best Evidence Rule was violated when the court accepted testimony that the board authorized the termination letter and did not require Hil-Roc to present the minutes of the board meeting.
 {¶ 45} The Best Evidence Rule is set forth in Evid. R. 1002 which states:
 {¶ 46} "To prove the content of a writing, recording, or photograph, the original writing, recording, or photograph is required, except as otherwise provided in these rules or by statute enacted by the General Assembly not in conflict with a rule of the Supreme Court of Ohio."
 {¶ 47} "This rule comes into effect only when there is an attempt to prove the content of a writing. It does not require that a writing must be produced where a fact can be proved by a writing." Fairfield Commons Condominium Assn. v. Steasa (1985),30 Ohio App.3d 11, 506 N.E.2d 237.
 {¶ 48} In this matter, the parties disputed the authority behind the March 18, 2004 letter. Although such authority could conceivably be memorialized within the board's minutes, the contents of "a writing" were not in issue in this matter. The Best Evidence Rule was not implicated in this connection.
 {¶ 49} This assignment of error is without merit.
Affirmed.
It is ordered that appellee recover from appellants its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Colleen Conway Cooney, J., and Christine T. Mcmonagle, J., concur.
[1] These entities are collectively referred to as "defendant" in this opinion.